IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA/DANVILLE DIVISION

| | |
|---|---|
| CASS TELEPHONE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04-2185 |
| | ) |
| McLEODUSA HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |

**McLEODUSA's MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COUNTS II,
III AND IV, AND TO STRIKE PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES**

Defendant McLeodUSA Holdings, Inc. ("McLeodUSA"), by its attorneys, respectfully submits this memorandum of law in support of its motion to dismiss plaintiff's Counts II (breach of common law fiduciary duty), III (tortious interference with business expectation) and IV (accounting), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). The Illinois economic loss doctrine bars plaintiff's Count III, which is in reality a contract claim improperly pleaded as a tort claim. Count II is barred because it is merely duplicative of Count I. Count IV, plaintiff's accounting claim, is similarly unsupported by law. McLeodUSA also moves to strike plaintiff's claims for punitive damages pursuant to Federal Rule of Civil Procedure 12(f) because plaintiff has not alleged any basis for recovering punitive damages under Illinois law.

# INTRODUCTION

This is a contract action. McLeodUSA and Cass are telephone companies that were parties to a partnership agreement, the Midwest Cellular Associates Agreement ("MCA Agreement"), for the purpose of the joint sale of wireless telephone services. Cass' core allegation is that McLeodUSA breached the MCA Agreement by independently selling its own wireless services and subsequently withdrawing from the partnership. As a result, Cass claims, it has suffered the loss of approximately $1.3 million because its interest in the parties' partnership, Midwest Cellular Associates ("MCA"), has been devalued by that amount. Cass' Count I is thus a straightforward breach of contract claim that McLeodUSA has answered concurrently with the filing of this motion.

Cass' Counts II and III are mere restatements of its breach of contract claim clothed as tort and equitable causes of action. The main purpose of Cass' recasting its contract claim as tortious interference with business expectation and breach of fiduciary duty claims appears to be the addition of punitive damage claims of $5 million dollars. However, Illinois law forbids Cass' effort to transform an ordinary commercial dispute for economic loss into an action for tort punitive damages.

The economic loss doctrine bars Count III in its entirety. This claim is for lost profits or the failure to recover the benefit of a bargain, and constitutes a claim for economic damages as a matter of law. These damages are only recoverable under the law of contract. Under the economic loss doctrine, parties to a contract can only seek tort damages if conduct occurs that establishes a tort distinguishable from or independent of the breach of contract. Cass' claim for economic loss in Count III is based on the same alleged conduct, and asserts the same injury, as its breach of contract claim, and is therefore barred.

Plaintiff alleges the same operative facts and the same injury as a basis for relief for both Count I and II. Therefore Count II should be stricken as duplicative pursuant to Federal Rule of Civil Procedure 12(f).

In Count IV, Cass seeks to enforce a right to a formal accounting from McLeodUSA. But Cass is not just seeking an accounting of the partnership, to which it is entitled. Instead, Cass demands an accounting of McLeodUSA's and its subsidiary's business financial information, unrelated to the partnership, to which Cass has no right under Illinois law or the MCA Agreement.

While Cass is free to pursue the contractual remedies bargained for by the parties, as it does in Count I, it cannot seek recovery in tort or equity solely to demand punitive damages. This Court should therefore dismiss all of Cass' claims arising from the parties' agreement, except Count I. And whether or not it dismisses Cass' Counts II and III, this Court should strike plaintiff's claims for punitive damages. Such damages are disfavored under Illinois law, and here plaintiff fails to allege any basis in fact or law to support those claims. Finally, this Court should dismiss Cass' action for an accounting to the extent it seeks information wholly unrelated to the affairs of the partnership.

## BACKGROUND

**The Cass-McLeodUSA Agreement.**

The allegations of the complaint, which are taken as true for the purposes of this motion,[1] state that McLeodUSA was a party to the MCA Agreement with Cass.[2] (Compl. ¶¶ 3-4.) The MCA Agreement established the parties' partnership. MCA was formed for the purpose

---

[1]    *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 910 (7th Cir. 1999).
[2]    McLeodUSA acquired Illinois Consolidated Mobile Communications, Inc. ("Consolidated") in 1997 and became a successor in the interests of Consolidated in the MCA that plaintiff and Consolidated entered into on or about October 31, 1986.

3

CHICAGO_1148417_2

of selling cellular telephone services pursuant to its interest in the Illinois SMSA Limited Partnership ("ILLSMSA"). (Compl. ¶ 5-6.) The MCA Agreement prohibited McLeodUSA from selling cellular telephone service in competition with the ILLSMSA. (Compl. ¶ 13.)

**The Alleged Breach.**

In October 2003, McLeodUSA determined that it no longer desired to sell cellular phone services pursuant to the parties' agreement. (Compl. ¶ 14.) McLeodUSA timely notified the General Partner of the ILLSMSA that pursuant to § 6.12 of the ILLSMSA Agreement, McLeodUSA was withdrawing from the ILLSMSA and in the process of offering cellular services in the same territories as those targeted by the ILLSMSA. (*Id.*) Thereupon, McLeodUSA ended its participation in the ILLSMSA and the MCA. (Compl. ¶¶ 14, 17.) The MCA Agreement acknowledges the parties' right to withdraw from the partnership. (MCA Agreement § 10.2, attached to plaintiff's Complaint.) Cass alleges that McLeodUSA's withdrawal from the partnership, and its offering of cellular services within these territories, breached the MCA Agreement. (Compl. ¶ 17.) Further, Cass alleges that the breach of the MCA Agreement has damaged Cass by reducing the value of its interest in MCA. (Compl. ¶ 19.)

**Proceedings to Date.**

On July 29, 2004, Cass filed this action in the Circuit Court of the Sixth Judicial Circuit Champaign County, Illinois, claiming breach of contract (Count I), breach of common law fiduciary duty (Count II), tortious interference with business expectation (Count III), and a right to a formal accounting (Count IV). McLeodUSA timely removed the action from Illinois state court to this Court by reason of diversity pursuant to 28 U.S.C. § 1446. McLeodUSA now seeks dismissal of all counts of plaintiff's complaint pursuant to Rule 12(b)(6) and Rule 12(f), except Count I - breach of contract.

**ARGUMENT**

I.  **COUNT III (TORTIOUS INTEREFERENCE WITH BUSINESS EXPECTATION) SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) BECAUSE IT IS BARRED BY THE ECONOMIC LOSS DOCTRINE AND FAILS TO PLEAD A CLAIM AGAINST A THIRD PARTY.**

Count III fails for two independent reasons: (1) there can be no tort claim for lost contractual expectations; and (2) plaintiff has failed to allege any concrete third-party business expectation.

The gist of plaintiff's complaint is that McLeodUSA breached the parties' MCA Agreement, and as a result plaintiff did not receive the benefit of its agreement with McLeodUSA. Taken as true, plaintiff's alleged damages are disappointed expectations, which cause only economic harm. Under Illinois law, a plaintiff cannot recover solely economic losses in tort. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 84-7, 435 N.E.2d 443, 450-53 (Ill. 1982); *Rardin v. T&D Machine Handling, Inc.*, 890 F.2d 24, 28 (7th Cir. 1989).

Illinois law recognizes that economic damages, or verifiable objectively monetary losses, specifically include the loss of business opportunities. *Love v. United States*, No. 91-C0693, 1992 U.S. Dist. LEXIS 5920, at *2-3 (N.D. Ill. Apr. 22, 1992). By contrast, non-economic losses are characterized as losses for pain, suffering, inconvenience, emotional distress, loss of consortium, injury to reputation, physical impairment, and disfigurement. *Id.* The foundation of the economic loss doctrine is the realization that contract law serves a vital commercial function by providing sellers and buyers with the ability to define the terms of their agreements with certainty prior to a transaction. *See Moorman*, 91 Ill. 2d 69, 435 N.E.2d 443; *see also Anderson Elec., Inc., v. Ledbetter Erection*, 115 Ill. 2d 146, 157, 503 N.E.2d 246, 251 (Ill. 1986) (Simon, J., concurring). The doctrine dictates that when a party to a contract suffers an economic loss arising from that transaction, it is limited to the remedies available under the

5

law of contract. *Morrow v. Goldschmidt Assoc., Inc.*, 112 Ill. 2d 87, 96, 492 N.E.2d 181, 184 (Ill. 1986); *see also Moorman*, 91 Ill. 2d at 84-7, 435 N.E.2d at 450-53.

The alleged conduct and harm that form the basis of plaintiff's tort claim are the same as those that form the basis of its breach of contract claim. Plaintiff alleges that McLeodUSA's alleged tortious interference with Cass' business expectation caused "the loss of [Cass'] expected profits and earnings from such lost opportunities and which would have benefited Cass as an MCA partner." (Compl. ¶ 59.) In other words, plaintiff alleges that McLeodUSA's actions caused plaintiff to *lose profits that it expected to reap from the MCA Agreement*. The only loss asserted by plaintiff is its "expected profits and earnings" under that agreement, not any loss outside or separate from the benefit it expected to receive under the agreement. Under Illinois law, a party to a contract that did not receive the benefit of its bargain is barred by the economic loss doctrine from bringing a tort claim on that basis. *Moorman*, 91 Ill. 2d at 84-7, 435 N.E.2d at 450-53. Parties to a contract can only seek tort damages for conduct that is distinguishable from, or independent of, the breach of contract. *Sorkin v. Blackman, Kallick & Co., Ltd.*, 184 Ill. App. 3d 873, 877-78, 540 N.E.2d 999, 1001-2 (1989). Because plaintiff has not plead such an independent tort, Count III is barred by the economic loss doctrine and should be dismissed with prejudice.

Plaintiff's tort claim is not only barred by the economic loss doctrine, however. It should also be dismissed because plaintiff has failed to adequately plead its claim. In order to maintain a tortious interference with business expectation claim, a plaintiff must plead: (1) a valid business expectancy; (2) defendant had knowledge of the expectancy; (3) defendant intentionally interfered with the prospective business relationship and prevented its realization; and (4) damage to the plaintiff. *DuPage Aviation Corp. v. DuPage Airport Auth.*, 229 Ill. App.

3d 793, 804, 594 N.E.2d 1334, 1340 (1992). The tort does not arise from the interference with a business expectation between the plaintiff and defendant. It arises only from the interference with an expectation between the plaintiff and a *third party*. *Id.* at 1341; *Bass v. SMG, Inc.*, 328 Ill. App. 3d 492, 503, 765 N.E.2d 1079, 1089 (2002) (stating "as a plain matter of logic and law, just as a party cannot tortiously interfere with its own contract, likewise a party cannot tortiously interfere with the business expectation that it created by that contract").

Here, plaintiff only alleges that McLeodUSA's conduct caused interference with plaintiff's business expectation *arising from its agreement with McLeodUSA*. (Compl. ¶¶ 58, 59.) Thus, plaintiffs allegations "fall far short of pleading a cause of action based on interference with a business relationship between the plaintiff and specific third parties or any clearly identifiable group of third parties contemplating prospective contractual arrangements with the plaintiff." *Parkway Bank & Trust Co. v. City of Darien*, 43 Ill. App. 3d 400, 403, 357 N.E.2d 211, 214-15 (1976). Because plaintiff has not alleged that McLeodUSA's conduct interfered with any valid business relationship with a third party, Count III must be dismissed.

For all the reasons set forth above, this Court should conclude that plaintiff has not, and cannot, plead a claim for tortious interference with a business expectation, and it should dismiss Count III with prejudice.

## II. COUNT II (BREACH OF COMMON LAW FIDUCIARY DUTY) SHOULD BE DISMISSED PURSUANT TO RULE 12(f) BECAUSE IT IS DUPLICATIVE OF PLAINTIFF'S COUNT I (BREACH OF CONTRACT) CLAIM.

Plaintiff's fiduciary claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(f) because it is duplicative of its breach of contract claim. Rule 12(f) provides that when two counts are based on the same operative facts or theories, they are redundant and should be stricken. *Calkins v. Fidelity Bond & Mortgage Co.*, No. 94-C5971, 1996 U.S. Dist. LEXIS 12453, at * 4 (N.D. Ill. Aug. 28, 1996); *Fields v. Feldmann Eng'g & Mfg. Co. Inc.*, No. 92-C1952, 1994 U.S. Dist. LEXIS 11396, at *11-12 (N.D. Ill. Aug. 12, 1994). In Counts I and II, plaintiff alleges that McLeodUSA breached the MCA Agreement (Count I) and breached its fiduciary duty (Count II) by (1) offering services within the defined territory, and (2) withdrawing from the partnership agreements, and that this conduct caused plaintiff to lose its contractual expectations. (Compl. ¶ 17, ¶ 38.) Under Illinois law, two claims are duplicative where they allege the same facts and the same injury. *McDermott, Will & Emery v. Ogle*, No. 01-C4837, 2001 U.S. Dist. LEXIS 18916, at *4 (N.D. Ill. Nov. 16, 2001). In *McDermott*, the court granted plaintiff's motion to dismiss defendant's counter-claim for breach of fiduciary duty where that claim was no different from defendant's counter-claims for negligence and malpractice. Here, both Counts I and II of the complaint are based on the same alleged conduct - McLeodUSA's offering of cellular services outside of the MCA and its withdrawal from the MCA. (Compare Compl. ¶ 17 to ¶ 38.) Illinois courts routinely dismiss duplicative claims that are based on the same operative facts. *E.g., Majumdar v. Lurie*, 274 Ill. App. 3d 267, 274, 653 N.E.2d 915, 921 (1995).

For the purposes of Rule 12(f), plaintiff's duplicative claims are redundant and should be dismissed. *Calkins*, 1996 U.S. Dist. LEXIS 12453, at *4. Plaintiff does not allege any basis for McLeodUSA's alleged fiduciary duty to plaintiff outside of MCA or the MCA

8

Agreement. (Compl. ¶ 37.) And plaintiff's only alleged factual basis for claiming that McLeodUSA breached a fiduciary duty owed to plaintiff is indistinguishable from the conduct plaintiff alleges in its claim for breach of contract in Count I. (Compl. ¶ 38.) Clearly, plaintiff is attempting to assert a duplicative claim in Count II, and therefore should be stricken as a redundant matter pursuant to 12(f).

### III. COUNT IV (ACCOUNTING) SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) BECAUSE IT SEEKS DOCUMENTS WHOLLY UNRELATED TO THE PARTIES' PARTNERSHIP AND THEREFORE FAILS AS A MATTER OF LAW.

Plaintiff's claim for an accounting should also be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. Plaintiff's complaint cites the MCA Agreement (Section 6.3) and the Illinois Uniform Partnership Act (Section 21) as providing it with a right to a formal accounting. Both sources do in fact provide plaintiff with a right to an accounting, but that right is limited to information relating "to partnership affairs." 805 ILL. COMP. STAT. 205/22 (2004); MCA Agreement § 6.3 (attached to plaintiff's complaint.) Plaintiff has not so limited its claim in Count IV of its complaint. Rather, in addition to its allegation that McLeodUSA has not provided full information about all things relating to the partnership, plaintiff seeks "a formal account for the profits and benefits derived by McLeod from unilaterally electing to offer Cellular Services through its Affiliate and subsidiary…." (Compl. ¶ 79.) But a former partner has no right to an accounting of its former partner's separate corporate business affairs unrelated to the affairs of the partnership. *Schane v. Conrad*, 68 Ill. App. 3d 961, 386 N.E.2d 431 (1979). Information about McLeodUSA's separate business activities outside of the MCA partnership is wholly separate and unrelated to the MCA or its affairs. Plaintiff has failed to state a basis for providing it with a formal right to an accounting for information beyond the scope of MCA affairs. Count IV should therefore be dismissed.

9

### IV. PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES SHOULD BE STRICKEN BECAUSE PLAINTIFF HAS NOT ALLEGED ANY BASIS FOR SUCH RELIEF AND PUNITIVE DAMAGES ARE BARRED IN THIS CONTEXT AS A MATTER OF LAW.

If the Court dismisses plaintiff's tort and fiduciary duty claims, it should strike plaintiff's demand for punitive damages pursuant to Federal Rule of Civil Procedure 12(f). Illinois law does not allow punitive damages for ordinary breach of contract disputes. *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 187, 384 N.E.2d 353, 360 (Ill. 1978). Thus if this Court strikes plaintiff's Counts II and III for the reasons set forth above, it must also strike its punitive damage claims.

But even if this Court allows one or both of those claims to go forward, it should still strike plaintiff's claims for punitive damages. The Seventh Circuit has recognized that punitive damages are "not favored in the law, and courts must be cautious in seeing that they are not improperly or unwisely awarded." *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 78 F.3d 266, 276 (7th Cir. 1996). A party seeking punitive damages must establish "not only simple fraud but gross fraud, breach of trust, or other extraordinary or exceptional circumstances clearly showing malice or willfulness." *Europlast Ltd. v. Oak Switch Sys., Inc.*, 10 F.3d 1266, 1276 (7th Cir. 1993). Allegations of deceit or of intentional conduct alone cannot support punitive damages under Illinois law. *Goodloe v. Nat'l Wholesale Co.*, No. 03-C7176, 2004 WL 1631728, at *16 (N.D. Ill. July 19, 2004). The initial question whether the facts alleged would justify the imposition of punitive damages is one of law. *Kelsay*, 74 Ill.2d at 186, 384 N.E.2d at 359.

Plaintiff tacks on claims for punitive damages to Counts II and III of its complaint without alleging conduct on the part of McLeodUSA that would entitle plaintiff to punitive damages. In Count II, plaintiff baldly alleges that McLeodUSA's actions "were done knowingly and with a reckless indifference to the interests of Cass in MCA entitling Cass to punitive

10

damages in excess of $5,000,000." (Compl. ¶ 40.) In Count III, plaintiff alleges only that McLeodUSA's interference has caused plaintiff to be "damaged by the loss of expected profits and earnings from such lost opportunities . . . accordingly, Cass is entitled to punitive damages in excess of $5,000,000." (Compl. ¶ 59.)

Even if taken as true, plaintiff's conclusory allegations completely fail to support claims for punitive damages under Illinois law. *Europlast Ltd.*, 10 F.3d at 1276. At most, plaintiff alleges that McLeodUSA knowingly breached its fiduciary duty to plaintiff and knowingly interfered with plaintiff's business expectation when it voluntarily withdrew from its contractual agreements. But that is not enough. Breaches of contract are often knowing. Plaintiff fails to allege any conduct or intent by McLeodUSA that would rise to the level of malice, wantonness or oppression. Indeed, the MCA specifically contemplates withdrawal by one of the partners. (*See* MCA Agreement ¶ 10.2.)

In *Ocean Atlantic*, the court struck (on its own motion) a party's claim for punitive damages where plaintiff alleged that the defendant's breach of their contract was willful. *Ocean Atl. Dev. Corp. v. Willow Tree Farm L.L.C.*, No. 01-C5014, 2002 U.S. Dist. LEXIS 5465, at *11-12 (N.D. Ill. March 29, 2002). The court held that punitive damages are not recoverable for breach of contract except where the conduct causing the breach is a separate tort for which punitive damages are recoverable and where there are "proper allegations of malice, wantonness or oppression. Generally, this is where the harm alleged goes beyond the defeated expectations of the contract." *Id.* (citation omitted). Here, there are no such allegations.

For all the reasons set forth above, this Court should conclude that plaintiff has not alleged a basis for punitive damages in law or fact and strike plaintiff's claims for such damages pursuant to Rule 12(f).

11

## CONCLUSION

For the reasons stated above, this Court should dismiss plaintiff's Counts II, III and IV with prejudice and strike plaintiff's punitive damage claims.

Respectfully submitted,

McLeodUSA Holdings, Inc.

By:     s/ Edward F. Malone

One of Its Attorneys

Edward F. Malone (# 06208496)
Daniel J. Weiss (# 6256843)
Attorneys for McLeodUSA Holdings, Inc.
Jenner & Block LLP
One IBM Plaza
Chicago, Illinois   60611
(312) 222-9350
(312) 527-0484
emalone@jenner.com
dweiss@jenner.com

September 17, 2004

CHICAGO_1148417_2