**E-FILED**
Friday, 01 October, 2004  02:14:49 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA/DANVILLE DIVISION**

| | | |
|---|---|---|
| CASS TELEPHONE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 04-2185 |
| | ) | |
| MCLEODUSA HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**CASS TELEPHONE COMPANY'S RESPONSE**
**TO MCLEODUSA'S MOTION TO DISMISS COUNTS II, III AND IV,**
**AND MOTION TO STRIKE CLAIMS FOR PUNITIVE DAMAGES**

**INTRODUCTION**

Defendant McLeodUSA Holdings, Inc. ("McLeod" or "Defendant") and/or its predecessor in interest, Illinois Consolidated Mobile Communications, Inc. ("Consolidated") was the managing partner of Midwest Cellular Associates ("MCA").  (Complaint, para. 4, 10; Def. Answer, para. 4)  Plaintiff Cass Telephone Company ("Cass" or "Plaintiff") was also a partner in MCA.  (Complaint at para. 4). MCA acquired an interest in Illinois SMSA Limited Partnership ("ILLSMSA"), which provided cellular service to residents of Champaign County and surrounding areas.  (Complaint, para. 5, Def. Answer, para. 5).  Under the express terms of the MCA agreement between Plaintiff and McLeod, McLeod was precluded from, directly or indirectly, competing with ILLSMSA in the provision of cellular services in any area in which ILLSMSA is or is licensed to provide Cellular Services. (Complaint, para. 13, Def. Answer, para. 13).

Defendant claims this is solely a contract action.  (Defendant's Mem. of Law, page 2).  More accurately, this is an action for breach of fiduciary duty which is, coincidentally, also a contract action. Cass alleges McLeod knowingly, willfully and without notice or consent,

1

violated the MCA agreement, and breached its fiduciary duty as a managing partner of MCA, when McLeod provided competing cellular services through its subsidiaries and affiliates and engaged in other conduct set forth in Plaintiff's Complaint.

Defendant has filed a Motion to Dismiss, asking the Court to dismiss Count II (Breach of Common Law Fiduciary Duty), Count III (Tortious Interference With Business Expectation), and Count IV (Accounting), and to strike Plaintiff's claim for punitive damages. For the reasons detailed below, Defendant's motion to dismiss should be denied.

## ARGUMENT

### I.     Defendant's Motion To Dismiss Count II Must Be Denied Because It Is Not Duplicative Of Count I

The Federal Rules of Civil Procedure generally provide that a party can move to strike "redundant" matter. FED. R. CIV. P. 12(f). Motions to strike "are disfavored and usually denied." Spearman Industr., Inc. v. St. Paul Fir and Marine Ins., 109 F.Supp.2d 905, 907 (N.D. Ill. 2000); Tektel, Inc. v. Maier, 813 F. Supp. 1331, 1333 (N.D. Ill. 1992). See also Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir. 1991), cert. denied, 504 U.S. 957, 112 S. Ct. 2306, 119 L.Ed.2d 228 (1992)(motions to strike are disfavored); Heller Financial Inc. v. Midwhey Power Co., 883 F.2d 1286, 1294 (7th Cir. 1989)(same). The party moving to strike has the burden of proving the "challenged allegations are so unrelated to plaintiff's claims as to be devoid of merit, unworthy of consideration and unduly prejudicial." E & J Gallo Winery v. Morand Bros. Beverage Co., 247 F.Supp.2d 979, 982 (N.D. Ill. 2003); Spearman, 109 F.Supp.2d at 907; Tektel, 813 F. Supp. at 1334.

Defendant has failed to demonstrate the allegations of Count II are unrelated to the Plaintiff's claim. To the contrary, Defendant merely contends dismissal is warranted because Count I and Count II are based on the same operative facts and theories. Defendant's theory, if

accepted, would be contrary to the Federal Rules of Civil Procedure which allow a party to allege "two or more statements of a claim . . . either in one count . . . or in separate counts. . . " FED. R. CIV. P. 8(e)(2). Although a plaintiff cannot obtain double recovery, "the court does not need to force plaintiffs to elect one recovery over the other." Industr. Hard Chrome, Ltd., v. Hetran, Inc., 64 F.Supp.2d 741 (N.D. Ill. 1999).

The allegations by Plaintiff in Count II are clearly related to the claim for breach of fiduciary duty. Defendant does not argue otherwise and its motion to strike should be denied on this basis alone.

Causes of action for breach of contract and breach of fiduciary duty are two distinct causes of action. A plaintiff alleging breach of contract must prove (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by plaintiff of the required conditions, (5) breach, and (6) damages. Village of South Elgin v. Waste Management of Illinois, Inc., 348 Ill.App.3d 929, 810 N.E.2d 658, 669 (2nd Dist. 2004). In contrast, a plaintiff alleging breach of fiduciary duty must prove (1) the existence of a fiduciary relationship, (2) that the fiduciary owed certain duties, (3) breach of those duties, and (4) resulting damages. Chicago City Bank and Trust Co. v. Lesman, 186 Ill.App.3d 695, 542 N.E.2d 824, 827 (1st Dist. 1989). A plaintiff can recover punitive and other damages under a breach of fiduciary duty claim that are not otherwise generally recoverable for breach of contract. In re Estate of Wernick, 127 Ill.2d 61, 535 N.E.2d 876 (1989)(prejudgment interest). The elements of each of these causes of action are distinct, and not "duplicative" as alleged by Defendant.

In this case, the Complaint alleges a partnership existed between Plaintiff and Defendant, and that Defendant was the managing partner of that partnership. (Complaint, para. 4, 10). Partners have a fiduciary relationship, owing one another a duty of full disclosure of material facts. Golden v. McDermott, Will & Emery, 299 Ill.App.3d 982, 988, 702 N.E.2d 581 (1st Dist.

3

1998).  Every partner must account to the partnership for any benefit, and hold as a trustee for it

any profits derived by him without the consent of the other partners from any transaction

connected with the conduct of the partnership.  Illinois Uniform Partnership Act at Section 21

(805 ILCS 205/21).  A managing partner who is responsible for all financial aspects of the

partnership has the duty, as trustee, to maintain regular and accurate records and to account for

partnership transactions.  Couri v. Couri, 95 Ill.2d 91, 447 N.E.2d 334 (1983).

Partners may establish between themselves the rights and obligations governing their

relationship through a partnership agreement.  Borys v. Rudd, 207 Ill.App.3d 610, 566 N.E.2d

310 (1st Dist. 1990).  In this case, however, even apart from the rights and obligations arising

from the partnership agreement, there is an implicit fiduciary duty to act in the best interests of

the partnership with respect to all matters reasonably relating to the partnership business.  Cronin

v. McCarthy, 264 Ill.App.3d 514, 637 N.E.2d 668, 675 (1st Dist. 1994); Couri, 447 N.E.2d at

337-38.    The fiduciary relationship that exists among partners prohibits all forms of secret

dealings and self-preference in any matter relating to and connected with the partnership,

including the enhancement of personal interests at the expense of the interests of the enterprise.

Doherty v. Kahn, 289 Ill. App. 3d 544, 682 N.E.2d 163 (1st Dist. 1997).

Defendant accordingly had not only the duty to perform the contract but had the

additional fiduciary duty to exercise the utmost good faith and honesty in all dealings and

transactions that relate to the business of the partnership and to make a full and fair disclosure of

all partnership business to Plaintiff.  Counts I and II of the complaint reflect the distinction

between Defendant's contractual obligations and its fiduciary duty owed as a managing partner.

Plaintiff also notes that Defendant has denied that it was designated as the managing

partner in the agreement, even though it admits it was successor in interest to Consolidated and

even though it admits it sent a letter to ILLSMSA identifying itself as the managing partner of

4

MCA.  (Def. Answer, para. 4, 10, 14, Ex. C to Complaint). By proceeding in this manner Defendant appears to be minimizing the fiduciary aspect of its relationship with Plaintiff.  Under Illinois law, a partner's fiduciary duty and conduct thereunder is strictly scrutinized.  For example, in <u>Labovitz v. Dolan</u>, 189 Ill.App.3d 403, 545 N.E.2d 304 (1st Dist. 1989) the limited partners sued the general partner alleging a fiduciary duty was owed to distribute available cash flow to the partners.  The trial court held no inquiry could be made into the fairness of general partner's conduct because the articles of limited partnership gave the general partner sole discretion to determine cash distributions, with no liability for errors in judgment or for any acts or omissions that did not constitute willful misconduct.  The appellate court reversed, holding that despite having such broad discretion, the general partner still owed his limited partners a fiduciary duty, stating:

> It is no answer to the claim that plaintiffs make in this case that partners have the right to establish among themselves their rights, duties and obligations, as though the exercise of that right releases, waives or delimits somehow, the high fiduciary duty owed to them by the general partner—a gloss we do not find anywhere in our law.   On the contrary, the fiduciary duty exists concurrently with the obligations set forth in the partnership agreement whether or not expressed therein.  Indeed, at least one of the authorities relied upon by defendants is clear that although 'partners are free to vary many aspects of their relationship *inter se* . . . they are not free to destroy its fiduciary character.'

189 Ill. App. 3d at 412 (<u>citing</u> <u>Saballus v. Timke</u>, 122 Ill.App.3d 109, 116, 460 N.E.2d 755 (1st Dist. 1984).

Thus, the language in the articles did not deprive the plaintiffs of the trial they sought against the general partner for breach of fiduciary duty.  The appellate court agreed the trial court did not give due consideration to the general partner's duty to exercise the highest degree of honesty and good faith in his handling of partnership assets.  The appellate court held this was contrary to the principle that "in any fiduciary relationship, the burden of proof shifts to the fiduciary to show by clear and convincing evidence that a transaction is equitable and just."  189

Ill.App.3d at 413 (quoting Bandringa v. Bandringa, 20 Ill.2d 167, 170 N.E.2d 116 (1960)).   In fact, where there is a question of breach of a fiduciary duty of a managing partner, all doubts will be resolved against him, and the managing partner has the burden of proving his innocence. Saballus, 122 Ill. App. 3d at 117-18 (citing Bakalis v. Bressler, 1 Ill.2d 72, 78, 115 N.E.2d 323 (1953)).   In any fiduciary transaction wherein the dominant party has profited, the burden of proof shifts.   Boryca v. Parry, 24 Ill.2d 320, 327, 181 N.E.2d 124, 127 (1962).   The law will "presume as fraudulent any transaction between the parties wherein the dominant party has profited" and the dominant party "must rebut the presumption of fraud by clear and convincing proof that he has exercised good faith and has not betrayed the trust and confidence reposed in him." Boryca, 181 N.E.2d at 127.

For all of the foregoing reasons, Count I and Count II are not duplicative and Defendant's Motion to Dismiss on that ground should be denied.

## II.    Defendant's Motion To Dismiss Count III Must Be Denied Because The Seventh Circuit Court Of Appeals Has Determined The Economic Loss Doctrine Does Not Bar Tortious Interference Claims Under Illinois Law And The Claim Was Adequately Pleaded Under The Federal Rules Of Civil Procedure

A court may grant a motion to dismiss for failure to state a claim "only if 'it is clear that no relief could be granted under any set of facts that could be provided consistent with the allegations of the complaint.'" Cook v. Winfrey, 141 F.3d 322, 327 (7th Cir. 1998)(quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). When considering such motion, the court must assume all well-pleaded facts are true and draw all reasonable inferences in the light most favorable to the plaintiff.   Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir. 1990); Triad Associates, Inc. v. Chicago Housing Authority, 892 F.2d 583, 586 (7th Cir. 1989), abrogated on other grounds, 518 U.S. 668, 116 S. Ct. 2342, 135 L.Ed.2d 843 (1996).   Moreover, the court's task in considering a motion to dismiss is limited

to testing the sufficiency of the complaint, and not deciding the merits.  Id.

Defendant contends Plaintiff's Count III alleging Tortious Interference with Business Expectation should be dismissed because such claim: (1) is barred by the economic loss doctrine, and (2) is not sufficiently pleaded.  Defendant's arguments on both these points have been previously considered and rejected by the Seventh Circuit Court of Appeals.  Defendant's motion must therefore be denied.

### A.    The Economic Loss Doctrine Does Not Bar Plaintiff's Claim For Tortious Interference With Business Expectation

Illinois federal and state courts have both determined the economic loss doctrine does not bar claims for tortious interference with business expectation.  See, e.g., Cromeens, Holoman, Sibert, Inc. v. Ab Volvo, 349 F.3d 376, 398 (7th Cir. 2003); Medline Industries, Inc. v. Maersk Med. Limited, 230 F.Supp.2d 857 (N.D. Ill. 2002)(finding economic loss doctrine does not apply to tortious interference claims under Illinois law);Werblood v. Columbia College of Chicago, 180 Ill.App.3d 957, 536 N.E.2d 750 (1st Dist. 1989)(holding the economic loss doctrine did not preclude claims for tortious interference with prospective economic advantage); Santucci Constr. Co. v. Baxter & Woodman, Inc., 151 Ill.App.3d 547, 502 N.E.2d 1134, 1139 (2nd Dist. 1986). The holdings in Werblood and Santucci were expressly recognized by the Illinois Supreme Court and implicitly approved in 2314 Lincoln Park West condominium Assoc. v. Mann, Gin, Ebel & Frazier, Ltd., 136 Ill.2d 203, 555 N.E.2d 346, 352 (Ill. 1990).

Considering the issue of whether the economic loss doctrine bars tortious interference claims, the Seventh Circuit stated in Cromeens "[w]e can dispense with this argument easily" and that "[t]he Moorman doctrine does not apply to actions for intentional interference with prospective business advantage."  349 F.3d at 398 (citing 2314 Lincoln Park, 555 N.E.2d at 352). In Santucci, the Illinois Court of Appeals rejected application of the economic loss doctrine in

the tortious interference context, stating:

> We are well aware that the court in *Moorman* only referred to two exceptions to the economic loss doctrine, i.e. where one intentionally makes false representations and where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations . . . Nevertheless, we do not believe the questions addressed and decided in *Moorman* and in the subsequent supreme court decisions . . . were intended to abolish causes of action for intentional interference with contract and prospective advantage.

502 N.E.2d at 1138-39 (citations omitted).   Defendant's argument that the economic loss doctrine applies is wholly without merit. Pursuant to <u>Cromeens</u>, <u>Werblood</u>, <u>Santucci,</u> and <u>2314 Lincoln Park</u>, Defendant's motion to dismiss Count III on the basis of the economic loss doctrine must be denied.

**B.      Plaintiff Adequately Pleaded The Tortious Interference Claim And Dismissal Would Not Be Proper Under The Federal Rules of Civil Procedure**

Relying on Illinois state case law, the Defendant contends Count III should be dismissed because it is not adequately pleaded.  Defendant's argument is misguided because pleadings in Federal court are governed by notice, and not fact, pleading.  <u>Beanstalk Group, Inc. v. AM Gen. Corp.</u>, 283 F.3d 856, 863 (7th Cir. 2002)(Federal pleading rules govern in diversity suits); <u>Bogosian v. Board of Education of Comm. Unit School Dist. 200</u>, 73 F.Supp.2d 949 (N.D. Ill. 1999)(federal pleading rules applied when complaint was removed from state court); <u>Muick v. Glenayre Electronics</u>, 280 F.3d 741, 743 (7th Cir. 2002)(federal pleading requirements apply even when the claim pleaded arises under state law).

Under the federal pleading requirements, the complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief".  Fed. R. Civ. P. 8(a). The complaint does not need to spell out every element of a legal theory.  To the contrary, the complaint merely needs to provide the defendant with sufficient information to understand the

gravamen of the claim.  Byczek v. Boelter Co., 264 F.Supp.2d 720, 724 (N.D. Ill. 2003).

It is true that under Illinois law, the plaintiff must prove the following elements to *recover* for tortious interference with business expectations: 1) a valid business expectancy; 2) defendant's knowledge of the expectancy; 3) defendant's intentional interference with the prospective business relationship and prevention of its realization; and 4) damage to the plaintiff. Fellhauer v. City of Geneva, 142 Ill.2d 495, 510-13, 568 N.E.2d 870 (1991).  "Federal notice pleading standards do not require plaintiffs to plead these elements, because '[m]atching facts against legal elements comes later.'"  Equis Corp. v. Staubach Co., 2000 WL 283982 (N.D. Ill. 2000)(quoting Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc. 40 F.3d 247, 251 (7th Cir. 1994)).

Defendant erroneously contends Plaintiff only alleges interference with business expectations arising from the MCA agreement. In fact, Cass has alleged Defendant tortiously interfered with its expectancy in business opportunities arising from the MCA's ownership interest in ILLSMSA.  In particular, Cass has alleged tortious interference with its reasonable business expectations embodied in the MCA agreement and that McLeod "as a party with Cass to the MCA Agreement and with full knowledge of MCA's participation in the ILLSMSA Agreement, McLeod was fully aware that Cass possessed knowledge of the business purposes of the Agreements and possessed the expectation of benefiting from the business opportunities embodied in those Agreements through the provision of Cellular Services within the Territory." (Complaint, para. 58(B)). Plaintiff has also alleged a valid business expectancy, Defendant's knowledge of the business expectancy, Defendant's intentional interference with the business expectancy, and damages as a result. (Complaint, para. 58). Thus, despite the Defendant's argument to the contrary, Plaintiff has alleged all elements of a tortious interference claim.

Assuming, *arguendo*, that Plaintiff did not allege a business expectancy with ILLSMSA,

Defendant's motion should nonetheless be denied because the federal notice pleading standards do not require pleading the elements. See, e.g., Cook, 141 F.3d at 327; Medline, 230 F.Supp.2d at 870; Skolnick v. Correctional Med. Svcs., 1999 WL 1032782 (N.D. Ill. 1999); Equis Corp., 2000 WL 283982. In rejecting a defendant's argument that a tortious interference claim should be dismissed for failure to allege a business expectancy with a third party, the court in Cook stated:

> The Federal Rules do not require that [plaintiff's] complaint allege the specific third party or class of third parties with whom he claims to have had a valid business expectancy. He has alleged that such an expectancy existed and that [defendant] purposely interfered with it. Consistent with those allegations, [the plaintiff] might be able to prove a set of facts (including the identity of the parties or class of parties) that would entitle him to relief . . . A Rule 12(b)(6) motion cannot be used to dismiss a complaint on the ground that it does not include information that Rule 8 does not required it to contain.

Id. at 328. See also Medline, 230 F.Supp.2d at 870 (noting the Seventh Circuit has made it clear that plaintiff need not plead a specific third party or class of third parties with whom he claims to have had a valid business expectancy).

Pursuant to Federal Rule of Civil Procedure 8, and controlling Seventh Circuit Authority, the Defendant's motion to dismiss on grounds that the Plaintiff failed to plead interference with a third party is without merit. There is no such pleading requirement under Federal notice pleading, and even if such requirement existed, Plaintiff's complaint alleges expectancy with a third party expectancy.

## III.     Defendant's Motion To Dismiss Count IV Is Without Merit

The Illinois Uniform Partnership Act provides for a formal accounting as to partnership affairs (1) if one partner is wrongfully excluded from the partnership business or possession of its property by a co-partner, (2) if the right exists under the terms of any agreement, (3) as provided in Section 21 of the Act, and (4) whenever other circumstances render it just and

reasonable.    805 ILL. REV. STAT. 205/22.   The Illinois Uniform Partnership Act provides at Section 21 (805 ILCS 205/21) that "every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property." (Complaint, paras. 77, 78).

Section 6.3 of the MCA Agreement likewise grants Plaintiff comprehensive rights to: (1) inspect and copy Partnership books of record, accounting records, financial statements, or other records or reports, (2) have on demand a true and full information *of all things affecting the Partnership* and a formal account of Partnership affairs, and (3) inspect and copy the books of record, accounting records, financial statement, or other records or reports of the Managing Partner *relating to its operation of the Partnership*.   (Complaint, para. 76, section 6.3 of MCA Agreement (emphasis added)).

In an accounting action, the burden of proof lies with the managing partner "to show by clear, convincing, unequivocal and unmistakable evidence that he has been completely frank and honest with his partner and has made full disclosure and not dealt secretly behind his partner's back."    Beerman v. Graff, 250 Ill.App.2d 632, 621 N.E.2d 173, 178 (1st Dist. 1993). Notwithstanding this burden, and relying on Schane v. Conrad[1], Defendant contends Plaintiff is not entitled to an accounting under the Code or the MCA Agreement, stating "a former partner has no right to an accounting of its former partner's separate corporate business affairs unrelated to the affairs of the partnership."  Defendant's argument necessarily presumes Plaintiff seeks an accounting of affairs unrelated to the partnership.

---

[1] The case of Schane v. Conrad is clearly distinguishable.  In Schane v. Conrad the plaintiff was held not entitled to an accounting from a non-partner entity.  68 Ill.App.3d 961, 386 N.E.2d 431 (1st Dist. 1979).   Unlike Schane, McLeod was the managing partner and it is the entity from whom the accounting is sought.

The Complaint makes clear, however, that the accounting sought relates directly partnership affairs. While still a managing partner of MCA, and partner of Cass, McLeod sent a notice to the General Partner of ILLSMSA advising that its affiliate was in the process of offering Cellular Services within the Territory. (Complaint, para. 14). Website advertising by McLeod confirmed it was also actually offering such competing Cellular Services on or before the date the notice was sent to ILLSMSA. (Complaint, para. 14).

Under these allegations – which must be accepted as true for purposes of a motion to dismiss - Plaintiff is entitled to an accounting from McLeod for true and full information of all things affecting the Partnership and a formal account of Partnership affairs, including an accounting of profits and benefits derived by McLeod from offering Cellular Services through its affiliate and subsidiary in the Territory. See Peskin v. Deutsch, 134 Ill.App.3d 48, 479 N.E.2d 1034, 1038 (1st Dist. 1985)(where partnership agreement providing for sharing of income in relation to practice of law, payments received by defendant for practice of law were accountable to the partnership).

Defendant's argument that an accounting by McLeod for things affecting the partnership is not permitted because such is unrelated "to partnership affairs" makes no sense. The partnership affairs included the business of providing Cellular Service and sharing profits that should have benefited Plaintiff, but were instead wrongfully diverted by Defendant from the partnership and to its corporate benefit. (Complaint, para. 5, 6, 8, 14, 17). The request for an accounting relates to partnership affairs. As such, Plaintiff is entitled to the requested accounting.

## IV.    Defendant's Motion to Strike Plaintiff's Claim For Punitive Damages Is Without Merit

Defendant's motion to strike Plaintiff's claim for punitive damages is premised on the

2:04-cv-02185-MPM-DGB    # 10    Page 13 of 15

faulty assumption that the breach of fiduciary duty and tortious interference claims should be dismissed. Defendant further contends that punitive damages have not been adequately pleaded.

As set forth in Sections I and II, Plaintiff's breach of fiduciary duty and tortious interference claims are not subject to dismissal. Regarding Defendant's pleading argument, Plaintiff has ignored the Federal notice pleading requirements, and has cited a number of cases that do not address dismissal of a claim for punitive damages on a 12(b)(6) motion.[2]

Defendant's federal case law is not only inapplicable to the issues raised, but at least one case actually supports Plaintiff's ability to seek punitive damages. In Europlast, Ltd. V. Oak Switch Systems, Inc., 10 F.3d 1266, 1276 (7th Cir. 1993), the plaintiff had sued the defendant for, *inter alia*, fraudulent misrepresentation and tortious interference. After plaintiff was awarded punitive damages, the defendant appealed the trial court's submission of punitive damages to the jury. Although the Seventh Circuit reversed the trial court, it stated "the plaintiff may be entitled to punitive damages on either of its tort claims." Id.

In fact, the Illinois state courts have determined that punitive damages are allowable where the wrong involves some violation of a duty arising from the relationship of trust and confidence. Home Savings & Loan Ass'n. v. Schneider, 108 Ill.2d 277, 284, 483 N.E.2d 1225 (1985)(quoting Laughlin v. Hopkinson, 292 Ill. 80, 89, 126 N.E. 591 (1920)). Punitive damages are appropriate to punish and deter conduct where the defendant is guilty of an intentional breach

---

[2] None of the federal cases cited by Defendant addressed the issue of whether a punitive damage claim could be dismissed on a 12((b)(6) motion. The court in Roboserve, Inc. v. Kato KagakuCo., 78 F.3d 266, 276 (7th Cir. 1996) addressed the issue of whether the plaintiff had proved punitive damages on a motion for judgment notwithstanding the verdict. The court in Europlast Ltd. V. Oak Switch Sys., Inc., 10 F.3d 1266, 1276 (7th Cir. 1993) likewise reviewed the district court's submission of punitive damages to the jury. In Goodloe v. Nat'l Wholesale Co., 2004 WL 1631728 (N.D. Ill. 2004), the court addressed punitive damages in the context of whether the plaintiff could establish diversity jurisdiction under the $75,000.00 jurisdictional requirement. The court did not address the issue of whether the plaintiff's claims should be dismissed under 12(b)(6).

of fiduciary duty.  <u>Citicorp Savings v. Rucker</u>, 295 Ill. App. 3d 801, 810-11, 692 N.E.2d 1319 1998).  Punitive damages are also recoverable under tortious interference claims.  <u>E.J. McKernan Co. v. Gregory</u>, 252 Ill.App.3d 514, 623 N.E.2d 981, 997-98 (2nd Cir. 1993).

Pursuant to the Complaint, Defendant was a managing partner for Plaintiff. (Complaint, para. 4, 10).  As a partner, and as a managing partner, Defendant owed a fiduciary duty to partner Cass.  Defendant knowingly and intentionally breached that fiduciary duty with reckless indifference to the rights of Cass when it (1)failed to disclose to Plaintiff that is was going to offer competing cellular services, (2) engaged in conduct that required the withdrawal of MCA from the ILLSMSA), (3) failed to act in utmost good faith in partnership affairs, and (4) unilaterally terminated the MCA partnership without Plaintiff's consent. (Complaint, para. 38).  Defendant's actions in unilaterally electing to offer Cellular Services through its affiliate and subsidiary in the Territory, while also bound by its fiduciary duties to MCA and Plaintiff, tortiously interfered with Plaintiff's reasonable business expectations embodied in the MCA agreement.  (Complaint, para. 58).

At this stage in the proceedings, the court's role is not to determine the merits of Plaintiff's claim for punitive damages.  The sole issue before the court is whether punitive damages could be available for breach of fiduciary duty and tortious interference claims under any conceivable facts.  There is no legal impediment to punitive damages in this case.  Defendant's motion to dismiss this claim must therefore be denied.

### CONCLUSION

**WHEREFORE,** for all of the foregoing reasons, Plaintiff respectfully requests that the court enter an order denying Defendant's motion to dismiss, awarding costs to Plaintiff, and such other relief as the court deems fair and equitable.

Respectfully submitted,

CASS TELEPHONE COMPANY,
Plaintiff,

By:    Meyer Capel, A Professional Corporation


s/Keith E. Emmons
Keith E. Emmons (#0739219)
Meyer Capel, A Professional Corporation
306 West Church Street
P. O. Box 6750
Champaign, IL 61826-6750
Telephone:  217/352-1800
Fax: 217/352-1083
E-mail:  kemmons@meyercapel.com