E-FILED
Friday, 03 December, 2004 02:39:50 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| CASS TELEPHONE COMPANY, | ) |
| an Illinois corporation, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. 04-2185 |
| MCLEODUSA HOLDINGS, INC., | ) |
| an Iowa corporation, | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

In July 2004, Plaintiff Cass Telephone Company filed a Complaint in the circuit court of the Sixth Judicial Circuit, Champaign County, Illinois, against Defendant McLeodUSA Holdings, Inc., alleging breach of contract, breach of fiduciary duty, and tortious interference with business expectation, and seeking an accounting. In August 2004, Defendant filed a Notice of Removal (#1), removing the case to this Court. Defendant alleges that the Court has jurisdiction over this case based on diversity (28 U.S.C. § 1332).

In September 2004, Defendant filed a Motion To Dismiss Plaintiff's Counts II, III and IV, and To Strike Plaintiff's Claims for Punitive Damages (#7). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendant McLeodUSA's Motion To Dismiss Plaintiff's Counts II, III and IV, and To Strike Plaintiff's Claims for Punitive Damages **(#7)** be **GRANTED in part** and **DENIED in part.**

### I. Background

The following background is taken from the complaint. Plaintiff Cass Telephone Company (hereinafter "Cass") is an Illinois corporation with its principal place of business in

Cass County, Illinois. Defendant McLeodUSA Holdings, Inc. (hereinafter "McLeod"), is a Delaware corporation with its principal place of business in Iowa. McLeodUSA Telecommunications Services, Inc. (hereinafter "MUSATS") is an affiliate and subsidiary of McLeod and does business in Champaign County, Illinois.

In 1986, Cass and Illinois Consolidated Mobile Communications, Inc., entered into an agreement (hereinafter "MCA agreement"). McLeod later succeeded to the interests of Illinois Consolidated Mobile Communications, Inc., in the MCA agreement.

The MCA agreement established Midwest Cellular Associates (hereinafter "MCA"), a general partnership formed to acquire, own, and sell an interest in Illinois SMSA Limited Partnership (hereinafter "ILLSMSA"). ILLSMSA operates cell towers and, doing business as Verizon Wireless, operates a retail outlet in Champaign County and provides services to cellular customers in Champaign County.

Defendant owned ninety-five percent of the MCA partnership and Plaintiff owned five percent of the MCA partnership. The MCA agreement designated McLeod the managing partner of MCA. Section 7.1 of the MCA agreement provides as follows: "The Managing Partner will at all times act in a fiduciary capacity and in the best interests of the Partnership." Section 7.7 of the MCA agreement provides in relevant part as follows:

> Except as permitted above, neither the Managing Partner nor any Affiliates thereof shall be permitted, directly or indirectly, to provide Cellular Service or engage in the sale or lease of terminal equipment used in connection therewith in competition with the Partnership in any area in which the Operating Partnership [(ILLSMSA)] is providing or is licensed to provide Cellular Service.

On October 28, 2003, McLeod sent a notice to Robert Allgood, the general partner of ILLSMSA, stating as follows:

> McLeodUSA Telecommunications Services, Inc., an Affiliate of MCA Cellular Associates and a subsidiary of its Managing Partner, is in the process of offering Cellular Services within the Territory and therefore must withdraw from the Partnership pursuant to Section 6.12 of the Agreement, and triggering the voluntary withdrawal provisions of Section 9.1 of the Agreement.

(Letter dated October 28, 2003, attached to Complaint as Exhibit C.) McLeod's website confirmed that it was already offering cellular services on the date of the letter and therefore it had clearly undertaken business activities necessary to offer cellular services by the time it sent the letter.

Plaintiff alleges that, by unilaterally choosing to offer cellular services through MUSATS without prior disclosure to Cass, McLeod breached the MCA agreement and breached its fiduciary duty to Cass.

Plaintiff's complaint alleges breach of contract (Count I), breach of common law fiduciary duty (Count II), and tortious interference with business expectation (Count III), and seeks an accounting of all transactions, profits, and benefits that McLeod derived from MUSATS (Count IV).

## II. Standard

When considering a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the claims, and draw all reasonable inferences in the light most favorable to the nonmoving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997). The Court should dismiss the case only if the nonmoving party can prove no set of facts consistent with the

3

allegations of the complaint that would entitle him to relief. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319-20 (7th Cir. 1997).

### III. Analysis

Defendant argues that the Court should dismiss the claims in Counts II, III, and IV for the following reasons: (1) Count II duplicates Count I; (2) Count III is barred by the Moorman doctrine; (3) alternatively, Count III fails to state a claim; and (4) Count IV seeks documents that are unrelated to the partnership. In addition, Defendant argues that the Court should strike the prayers for punitive damages in Counts II and III.

### A. Count II

Defendant first argues that the Court should dismiss Count II because it is based on the same operative facts and injury as Count I. Specifically, Defendant contends that Counts I and II are both based on McLeod's offering of cellular services outside of the MCA agreement and McLeod's withdrawal from MCA; and therefore, Plaintiff's basis for claiming that McLeod breached a fiduciary duty is the same as the conduct that Plaintiff alleges breached the contract in Count I. *See, e.g., McDermott, Will & Emery v. Ogle*, No. 01-C4837, 2001 WL 1465696, at *2 (N.D. Ill. Nov. 16, 2001) (granting a motion to dismiss a claim for breach of fiduciary duty where that claim was no different than alternative claims for negligence and malpractice).

Plaintiff responds that the Federal Rules of Civil Procedure allow a party to allege alternative bases for recovery. FED. R. CIV. P. 8(e)(2). Furthermore, Plaintiff contends that the claims in Counts I and II are not duplicative because they are based on distinct causes of action with different elements.

The Court agrees with Plaintiff. Plaintiff is entitled to plead in the alternative and the

4

Court cannot force a plaintiff to elect one recovery over the other. *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 747 (N.D. Ill. 1999). Accordingly, the Court recommends denying the motion to dismiss Count II.

### B. Count III

Defendant argues that the Court should dismiss Count III because it is barred by the Moorman doctrine and, alternatively, Count III fails to plead the elements of a claim for tortious interference with business expectation because it does not allege a business expectation between Plaintiff and a third party.

Illinois law governs the tortious interference claim. *Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 871 (N.D. Ill. 2002). It is well-settled in Illinois that the Moorman doctrine and its progeny did not abolish claims for intentional interference with contract and prospective advantage. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 398 (7th Cir. 2003) ("The Moorman doctrine does not apply to actions for intentional interference with contract or intentional interference with prospective business advantage."); *2314 Lincoln Park W. Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346, 352 (Ill. 1990) (citing Illinois cases allowing recovery of economic losses for intentional interference with contract and prospective economic advantage).

The elements of a claim of tortious interference with a business expectation are as follows: (1) the existence of a valid business expectation by a plaintiff; (2) the defendant's knowledge of this expectation; (3) the defendant's intentional and unjustified interference which prevents the realization of the business expectation; and (4) damage to the plaintiff as a result of the interference. *E.J. McKernan Co. v. Gregory*, 623 N.E.2d 981, 995 (2d Dist. Ill. 1993).

5

Tortious interference requires action toward a third person resulting in such interference. *Id*. However, the Seventh Circuit has made it clear that to survive a motion to dismiss a claim for tortious interference with prospective economic advantage, a plaintiff is not required to allege a specific third party or class of third parties with whom he claims to have had a valid business expectation. *Cook v. Winfrey*, 141 F.3d 322, 328 (7th Cir. 1998).

Defendant cites several Illinois cases in support of its argument that Plaintiff has failed to sufficiently allege that Defendant's actions were directed toward a third party. *See DuPage Aviation Corp. v. DuPage Airport Auth.*, 594 N.E.2d 1334, 1340 (2d Dist. Ill. 1992); *Bass v. SMG, Inc.*, 765 N.E.2d 1079, 1089 (1st Dist. Ill. 2002). However, the pleading requirements to survive a motion to dismiss under Illinois law are more stringent than federal pleading requirements. *Barrett v. Poag & McEwen Lifestyle Ctrs.-Deer Park Town Ctr., LLC*, No. 98 C 7783, 1999 WL 691850, at *9-10 (N.D. Ill. Aug. 26, 1999) (discussing the higher threshold to survive a motion to dismiss for a claim of tortious interference under the Illinois fact pleading standard compared to the federal notice pleading standard). Therefore, the Court is unpersuaded by Defendant's argument.

In federal court, a plaintiff need allege only that an expectation existed and that the defendant purposefully interfered with it. *Cook*, 141 F.3d at 328. Here, Plaintiff alleges that it had an "expectation of benefiting from the business opportunities embodied in the agreements between the parties through the provision of Cellular Services within the Territory" (Complaint, ¶ 58B), that Defendant knew of that business expectation (Complaint, ¶ 58A), and that Defendant interfered with Plaintiff's business expectation (Complaint, ¶ 58), resulting in damages.

Although a plaintiff is not required to allege a specific third party or class of third parties

with whom he claims to have had a valid business expectation, "[i]t is settled law that a party cannot tortiously interfere with his own contract; the tortfeasor must be a third party to the contractual relationship." *Quist v. Bd. of Trs.*, 629 N.E.2d 807, 811-12 (3rd Dist. Ill. 1994). Accordingly, McLeod cannot be liable for tortious interference with the contract "embodied in the agreements between the parties" (Complaint, ¶ 58B) for the simple reason that McLeod was a party to those agreements. *See Cromeens*, 349 F.3d at 397 ("A party may not be charged with tortious interference with respect to its own contract.").

Here, the claim in Count III is clearly based on McLeod's interference with the business expectations arising from the contract between Plaintiff and Defendant rather than between Plaintiff and an unidentified third party. Therefore, Plaintiff has failed to state a claim for tortious interference with business expectation and the Court recommends dismissing the claim in Count III. Because Plaintiff may be able to amend Count III to state a claim, the Court recommends that the dismissal be without prejudice.

### C. Count IV

Defendant next argues that the Court should dismiss Count IV because it seeks documents wholly unrelated to the parties' partnership.

Paragraph 79 of Count IV alleges that Defendant has failed to provide a formal accounting of the profits and benefits derived by McLeod as a result of its decision to offer cellular services through MUSATS. Plaintiff asks for an accounting of all things affecting its partnership with McLeod, including "all transactions, profits and benefits derived by McLeod from unilaterally electing to offer Cellular Services in the Territory through its affiliate, MUSATS." (Complaint, p. 10.)

The parties do not dispute that both the Illinois Uniform Partnership Act (805 ILCS 205/22) and the MCA agreement grant Plaintiff rights to an account of all things that affect their partnership. However, Defendant contends that information Plaintiff seeks regarding MUSATS is not related to the partnership because that information involves separate corporate business affairs. Defendant relies on *Schane v. Conrad*, 386 N.E.2d 431, 435 (1st Dist. Ill. 1979), in which the plaintiff had a partnership with the individual defendant. The plaintiff argued that, because he was entitled to an accounting from the individual defendant, he was also entitled to an accounting from a corporate defendant owned by the individual defendant when the evidence disclosed that the individual defendant had transferred assets, liabilities, and ownership to the corporate defendant. The court declined to address the merits of this argument, stating that it was vague and unsupported. *Id.*

In contrast, Plaintiff contends that the MUSATS information directly relates to its partnership affairs with McLeod. In support, Plaintiff cites *Peskin v. Deutsch*, 479 N.E.2d 1034, 1038 (1st Dist. 1985), which held that where a partnership agreement provided for sharing of income derived from the practice of law, payments reported by the defendant as "legal fees" on his income tax returns were subject to accounting.

Here, the MCA agreement provided that the parties would share income related to the provision of cellular service, through MCA's interest in Illinois SMSA Limited Partnership. Plaintiff contends that the information it seeks is related to Defendant's income from providing cellular services through MUSATS. Therefore, it is subject to accounting.

At this point, the Court cannot determine whether this information is so far removed from the affairs of the partnership that Plaintiff has failed to state a claim for accounting.

8

Accordingly, the Court recommends denying Defendant's motion to dismiss Count IV.

### D. Punitive Damages

Defendant argues that the Court should strike the request for punitive damages in Counts II and III because Plaintiff has failed to allege conduct that would justify the imposition of such damages.

Illinois courts do not favor punitive damages and insist that plaintiffs must establish not only simple fraud but gross fraud, breach of trust, or other extraordinary or exceptional circumstances clearly showing malice or willfulness. *Europlast, Ltd. v. Oak Switch Sys., Inc.*, 10 F.3d 1266, 1276-77 (7th Cir. 1993); *Kelsay v. Motorola, Inc.,* 384 N.E.2d 353, 359 (Ill. 1979) (In Illinois, punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others.). Punitive damages are in the nature of punishment and provide a warning and example to deter others from committing like offenses in the future. *Id*. The preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law. *Id*.

In Count II, Plaintiff alleged that McLeod acted "knowingly and with a reckless indifference." (Complaint, ¶ 40.) In Count III, Plaintiff alleges that McLeod's interference caused Plaintiff damage, and therefore Plaintiff "is entitled to punitive damages in excess of $5,000,000." (Complaint, ¶ 59.)

Courts may strike a request for punitive damages at the motion to dismiss stage (*see Oceans Atl. Dev. Corp. v. Willow Tree Farm L.L.C.*, No. 01-C5014, 2002 WL 485387, at *11-12 (N.D. Ill. Mar. 29, 2002)). Nevertheless, whether Defendant's conduct here reaches the level of

9

being intentional, deliberate, and outrageous is a question of fact that the Court declines to address at this stage of the proceedings. Accordingly, the Court recommends denying the motion to strike punitive damages.

### IV. Summary

For the reasons set forth above, this Court recommends that Defendant McLeodUSA's Motion To Dismiss Plaintiff's Counts II, III and IV, and To Strike Plaintiff's Claims for Punitive Damages **(#7)** be **DENIED as to Counts II and IV** and **GRANTED as to Count III**. In addition, the Court recommends **DENYING Defendant's motion to strike the request for punitive damages in Counts II and III**.

Because it is conceivable that Plaintiff can amend its complaint to state a claim in Count III, the Court recommends that the dismissal of Count III be without prejudice and that Plaintiff be granted leave to file an amended complaint consistent with this Recommendation within fourteen (14) days of the order ruling on the motion.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days afer being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 3rd day of December, 2004.

                                                  s/ DAVID G. BERNTHAL
                                                  U.S. MAGISTRATE JUDGE