E-FILED
Tuesday, 25 January, 2005  04:39:04 PM
Clerk, U.S. District Court, ILCD

8.2.1  The right of first refusal provided in Section 8.2 of this Agreement shall not apply to the following Dispositions of a Partnership Interest, so long as the transferee of the Partnership Interest has satisfied all of the requirements to become a substitute limited partner under Section 8.5 of this Agreement prior to or contemporaneous with the effective date of the Disposition:

(a)  Disposition of an entire Partnership Interest made to an Affiliate as defined in subsection (a) of Section 1.3;

(b)  Disposition of a Partnership Interest through a bequest or devise of the Partnership Interest to the spouse of an individual (or, if such individual has no spouse but has surviving immediate family members, to one or more members of the immediate family of such individual) who, on the date hereof, owns 50% or more of the capital stock of a Partner;

(c)  Disposition of a Partnership Interest through gift of the Partnership Interest to the spouse of an individual (or, if such individual has no spouse but has surviving immediate family members, to one or more members of the immediate family of such individual) who, on the date the immediate family of such individual) who, on the date hereof, owns 50% or more of the capital stock of a Partner;

(d)  Disposition of an entire Partnership Interest to a trust the beneficiary of which is the spouse or one or more other immediate family members of an individual who, on the date hereof, owns 50% or more of the capital stock of a Partner; or

(e)  Disposition of one-half of the Partnership Interest of Inland to Prarie Cellular Telephone Company.

(f)  Any transfer by way of sale, gift, assignment, exchange or other Disposition of any stock of a Partner, or of any stock of any corporation which controls a Partner, if made:

(i)  to the corporation, the stock of which is being transferred:

(ii)  to a Person who on the date hereof is a shareholder of any corporation which controls a Partner, or a Person who is a spouse, son, daughter, grandchild, brother or sister of any such Person;

(iii)  to a trust established by or for the benefit of any person described in (ii).

(iv)  in the case of Ameritech Information Technologies Corporation stock is a sale of less than a controlling interest in its stock.

In the event that any Disposition permitted under this Section 8.2.1 (except for subsection (e) thereof) would result in a Partnership Interest being owned by more than one person, in addition to the requirements set forth above, such Disposition shall be subject to a requirement that the transferees of the Partnership Interest shall own the Partnership Interest as tenants in common, joint tenants or other form of joint ownership.  No Disposition of any portion of a Partnership Interest so held in joint tenancy, tenancy in common or other form of joint ownership, or any interest therein or, may be made unless such Partnership Interest in its entirety is first offered to the other Partners, pursuant to the provisions of Section 8.3.

8.2.2  Without limiting anything elsewhere provided in Section 8.2, the right of first refusal with respect to a Partnership Interest, as

provided in Section 8.2, shall apply in the case of any of the following transactions:

(a)  Any transfer by way of sale, gift, assignment, exchange or other disposition (including without limitation disposition by inheritance, bequest, devise, or intestate succession) of any stock of a Partner, or of any stock of any corporation which controls a Partner, other than as described in Section 8.2.1(f);

(b)  Distribution of all or any portion of a Partnership Interest by a trust which is a Partner to any beneficiary of such trust;

(c)  Default by either Mt. Pulaski or Inland with respect to the Loan between each of them and Ameritech Mobile Communications, Inc. as provided in Section 8.2; or

(d)  Disposition of all or any portion of a Partnership Interest by inheritance, bequest, devise or intestate succession from any individual who has acquired ownership of such Partnership Interest or portion thereof through the operation of Section 8.2.1(b) or (c).

8.2.3  Unless the price at which a Partner having a right to purchase all or any portion of a Partnership Interest is determined by reference to a bona fide third party offer, the price at which a Partner shall have a right to purchase all or any portion of a Partnership Interest shall be the fair market sales value of such Partnership Interest.  In the event the parties are unable to agree on fair market sales value, such value shall be determined by an appraiser chosen by the parties for such purpose.  If the parties are unable to agree on an appraiser, or if the valuation as determined by the appraiser is not acceptable to one of the parties, then fair market sales value shall be determined by a panel of three appraisers, one of which shall be chosen by each of the parties

and the third appraiser shall be chosen by the other two, and the determination of value by such panel of appraisers shall be binding upon the parties.

8.3  Additional Limitation on Transfer.  Notwithstanding anything to the contrary contained in this Agreement, no Disposition of any Limited Partner's Partnership Interest, or any fraction thereof, may be made if such Disposition, when considered together with all other Disposition of Partnership Interests, would (in the opinion of counsel for the Partnership, which shall be conclusive for this purpose) result in the termination of the Partnership for the purposes of the then-applicable provisions of the Code.

8.4  Limitation on Further Transfer; Liabilities.  A Person who is the Recipient of all or any portion of the Partnership Interest of a Limited Partner, but is not admitted to the Partnership as a substitute Limited Partner pursuant to Section 8.5, shall be subject to all the provisions of this Article VIII to the same extent and in the same manner as any Limited Partner and shall be liable for all the liabilities of the assigning Limited Partner under this Agreement.

8.5  Substitute Limited Partner.  No Recipient of all or any portion of any Limited Partner's Partnership Interest shall have the right to become a substitute Limited Partner, unless:

(a)  The Limited Partner desiring Disposition has granted the Recipient such right in a written instrument of assignment, a copy of which has been delivered to the General Partner (the Limited Partner desiring Disposition being hereby given the power to grant such right, subject the further requirements of this Section 8.5); and

(b)  The Limited Partner desiring Disposition has obtained the written consent of the General Partner to such admission, which consent may not be unreasonably withheld; and

(c)  The Recipient has adopted and agreed in writing to be bound by all of the provisions of, and to assume all of the liabilities of the Limited Partner making the Disposition under, this Agreement; and

(d)  All documents reasonably required by the General Partner or required by the Act to effect the substitution of the Recipient as a Limited Partner shall have been executed and delivered to the General Partner at no cost to the Partnership and the Recipient has paid to the General Partner all reasonable expenses (including, without limitation legal fees and filing costs) of the Partnership in connection with such substitution; and

(e)  Any necessary prior consents have been obtained from the appropriate regulatory authorities.

8.6  Indemnification.  Each Limited Partner making a Disposition of all or any portion of its Partnership Interest and each Recipient of the same shall indemnify and hold harmless the Partnership, every other Partner and every employee, officer, director, partner, stockholder and Affiliate of every other Partner (or of any Affiliate of any Partner) against any and all loss, damage or expense (including, without limitation, tax liabilities arising from loss of tax benefits, attorneys' fees, fines, judgments and amounts paid in settlement of litigation or threatened litigation) incurred by the Partnership or such other Person and arising, directly or indirectly, from any sale, exchange, assignment

or other transfer or purported sale, exchange, assignment or other
transfer in violation of any law or any provision contained in this
Article VIII or from any actual or alleged material misrepresentation or
misstatement of facts or omission to state facts made (or omitted to be
made) by such Limited Partner or such other Person in connection with
any such sale, exchange, assignment or other transfer, or the admission
of such other Person as a substitute Limited Partner to the Partnership.

8.7  __Effective Date of Admission or Transfer__.  The effective date
of any admission of a Limited Partner to the Partnership and of any
assignment, sale, exchange or other transfer of a Partner's Partnership
Interest or portion thereof shall be the first day of the month
following the month in which all conditions to such admission or such
assignment, sale, exchange or other transfer, respectively, have been
satisfied.

ARTICLE IX

WITHDRAWAL BY LIMITED PARTNER; DEFAULT

9.1  __Voluntary Withdrawal__.  Upon thirty days' written notice to
each Partner, any Limited Partner may withdraw from the Partnership,
subject to any required regulatory approval; provided, however, that:
(1) no Limited Partner may withdraw from the Partnership if such with-
drawal would result in a termination of the Partnership for federal
income tax purposes or a dissolution of the Partnership for purposes of
the Act; and (2) in the case of withdrawal by Inland or Mt. Pulaski the
withdrawing Limited Partner shall have discharged and paid in full the
debt obligations incurred in connection with Ameritech Mobile
Communications, Inc.'s funding of Capital Contributions pursuant to the
Loan.  The effective date of any such withdrawal shall be the first day

of the month following the month in which all conditions to such with-drawal have been satisfied.

9.2  Default by Limited Partner.  The occurrence of any of the following events shall constitute a default with respect to a Limited Partner (a "Default"):

(a)  Such Limited Partner fails to make its Second Capital Contribution when due; or

(b)  Such Limited Partner fails to perform any of its obligations under this Agreement and such default is not corrected within sixty days after the same is called to the attention of such Limited Partner by the General Partner by written notice specifying the relevant failure; provided, however, that such sixty-day period shall cease to run during the pendency of any arbitration proceeding instituted pursuant to Section 15.10 to determine the existence of such a failure; or

(c)  Such Limited Partner becomes insolvent or bankrupt or unable to pay its debts when due or makes an assignment for the benefit of creditors.

(d)  In the case of Inland and Mt. Pulaski, if they shall fail to make any Capital Contribution when due at any time prior to repayment in full of the Loan between them and Ameritech Mobile Communications, Inc.

Notwithstanding anything herein to the contrary, a Partner's election pursuant to Section 4.4, within fifteen days of notice not to make an Additional Capital Contribution shall not be considered a Default.

- 42 -

9.3  <u>Remedies upon Default</u>.  Upon any Default with respect to any Limited Partner, the General Partner shall have all the rights and remedies provided by applicable law, and in addition, shall have the right (but not the obligation) (a) to require the defaulting Limited Partner to withdraw from the Partnership or (b) to arrange for a sale of the defaulting Limited Partner's Partnership Interest pursuant to Section 9.6.  Such rights are cumulative and not exclusive of each other or of any other right provided by applicable law.  By execution of this Agreement, each Limited Partner agrees that it shall promptly withdraw from the Partnership if so required by the General Partner upon a Default by such Limited Partner.  Any such withdrawal shall be effective as of the first day of the month following the month in which the General Partner notifies the defaulting Limited Partner that the General Partner is requiring such Limited Partner to withdraw.

9.4  <u>Distributions on Withdrawal</u>.  Upon the withdrawal of a Limited Partner pursuant to Section 9.1 or 9.3, the Limited Partner so withdrawing shall, subject to the provisions of Section 9.5 and the Act, receive distribution in cash of the lesser of (a) its Capital Account, determined in accordance with generally accepted accounting principles, or (b) its Capital Account, adjusted to reflect the Income and Losses that would be allocated to such Partner if the Partnership were dissolved and its affairs wound up in accordance with Article XI as of the date of such withdrawal.

Immediately prior to the effective date of the withdrawal, there will be a specific accounting of Income and Losses for both book and tax purposes in conformance with Section 5.2, provided, however, that such specific accounting shall be in lieu of a Section 5.2

- 43 -

allocation and shall cover the shorter of: (i) the fiscal year to the day prior to the effective date of the withdrawal or, (ii) the period beginning on the day following the date of the last specific accounting to the day prior to the effective date of the withdrawal.

Notwithstanding anything herein to the contrary, the General Partner shall be entitled to retain reasonable amounts which might otherwise be payable on withdrawal should the General Partner deem such advisable in providing for adjustments anticipated after the close of the fiscal year. A list of such contingencies and amounts retained shall be provided to the withdrawing Partner on the effective date of the withdrawal. Any amount retained and not expended by the General Partner shall be paid to the withdrawing Partner within twelve months of the date of withdrawal. The General Partner shall provide to the withdrawing Limited Partner an accounting, in reasonable detail, of any expenditures of withheld funds during such twelve month period except such amounts specifically identifiable as payable or accrued.

9.5 Distributions Over Time. If any distribution is made pursuant to Section 9.4, amounts payable to the Limited Partner so withdrawing shall be paid to such Limited Partner by the Partnership and may at the General Partner's option be paid in equal annual payments including interest over a period not exceeding three years in order to provide the Partnership sufficient time to raise capital to replace the capital being withdrawn and to ensure the continued provision of Cellular Service. Such interest shall be equal to the average annual yield to maturity which two leading U.S. Government securities dealers of recognized standing, selected by the General Partner, estimate to be the highest yield the General Partner could have obtained if it had

- 44 -

purchased U.S. Treasury obligations in a principal amount equal to the amount payable to the withdrawing Limited Partner with a maturity as near as practicable to the date of the last of such annual payments and trading in the secondary market in a reasonable volume at a price reasonably close to par with payments being made semi-annually, all in accordance with United States domestic practice.

9.6  Sale upon Default.  Upon any Default with respect to any Limited Partner, the General Partner shall have the right (but not the obligation) to arrange a sale of such Limited Partner's Partnership Interest.  In the event that the General Partner elects to arrange such a sale, it shall be on the best terms available, as determined by the General Partner in its sole discretion.  The General Partner, in determining whether any proposed terms are the best available, may take into account the necessity for concluding any such sale promptly. Subject to the provisions of Section 8.2, the purchaser in connection with any such sale may be the General Partner or any Affiliate of the General Partner.  The proceeds of such sale shall be paid to the Partnership to the extent necessary to satisfy the defaulting Limited Partner's obligations to the Partnership and the remainder, if any, of such proceeds shall be paid (after deducting all expenses of sale) to the defaulting Limited Partner.  If the defaulting Limited Partner's obligations to the Partnership exceed the proceeds of such sale (after deducting all expenses of sale), the defaulting Limited Partner shall continue to be liable to the Partnership for any such excess.  Subject to Section 8.7, the Person to whom such defaulting Limited Partner's Partnership Interest is sold shall take all right, title and interest of the defaulting Limited Partner in such Partnership Interest.  The

defaulting Limited Partner shall be deemed to have withdrawn from the Partnership upon such sale and no distribution shall be made to the defaulting Limited Partner upon its withdrawal.

## ARTICLE X

### ADMISSION AND WITHDRAWAL OF GENERAL PARTNER

10.1 <u>Admission of General Partner</u>.  (a)  The General Partner may admit a Person as an additional General Partner of the Partnership only with the specific written consent of every other Partner.  Any such admission shall be subject to any required regulatory approval.

(b)  The effective date of any admission of a General Partner to the Partnership and of any assignment, sale, exchange or other transfer of a General Partner's Partnership Interest shall be the first day of the month following the month in which all conditions to such admission or such assignment, sale, exchange or other transfer, respectively, have been satisfied.

10.2 <u>Withdrawal</u>.  Notwithstanding anything herein to the contrary, a General Partner may withdraw from the Partnership at any time upon ninety days' written notice to each other Partner.  If at the time of such notice, (a) there is at least one other General Partner of the Partnership, (b) the withdrawing General Partner assigns its Partnership Interest to such other General Partner or elects to convert its interest in the Partnership to that of a Limited Partner, and (c) the remaining General Partners unanimously vote to carry on the business of the Partnership, the Partnership shall not be dissolved and the business of the Partnership shall be carried on by the remaining General Partner or General Partners, subject to appropriate regulatory approval.  If the withdrawing General Partner elects to convert its interest in the

Partnership to that of a Limited Partner it may do so without regard to rights of first refusal provided for elsewhere in this Agreement, and shall upon withdrawal be admitted to the Partnership as a Limited Partner and shall have all the rights, interest and duties of the other Limited Partners under this Agreement, with a Capital Account, Percentage Interest and Tax Capital Account equal to what it had as a General Partner.  If at the time of such notice, (i) there is no other General Partner or (ii) the withdrawing General Partner neither assigns its Partnership Interest to the other General Partner nor elects to convert its interest in the Partnership to that of a Limited Partner, or (iii) the remaining General Partners do not unanimously vote to carry on the business of the Partnership, the Partnership shall be dissolved and its affairs wound up in accordance with Article XI; provided, however, that the Partnership shall not be dissolved if prior to the withdrawal of the withdrawing General Partner, the remaining Partners unanimously designate a Person who agrees (A) to purchase the Partnership Interest of the withdrawing General Partner, both in its capacity as General Partner and in its capacity as a Limited Partner, on terms acceptable to the withdrawing General Partner and (B) to continue the business of the Partnership as a new general partner of the Partnership.  In such event, subject to any required regulatory approval and to Section 10.1(b), (x) the withdrawing General Partner shall sell its Partnership Interest, both in its capacity as a Limited Partner and as a General Partner, to such Person on the terms agreed, (y) all of the Partners shall by written consent admit such Person as a general partner of the Partnership prior to the withdrawal of the withdrawing General Partner, and (z) upon the withdrawal of the withdrawing General Partner, the

business of the Partnership shall be carried on by such Person as the new General Partner. The General Partner shall not unreasonably withhold its acceptance of terms for purchase of its Partnership Interest by the substitute general partner.

10.3 <u>Encumbrance or Assignment</u>. Neither the encumbrance by the General Partner of all or any portion of its Partnership Interest nor the creation of a security interest therein shall cause the General Partner to cease to be a general partner of the Partnership. Notwithstanding anything to the contrary contained in this Article X or elsewhere in this Agreement, no sale or exchange of the General Partner's Partnership Interest, or any fraction thereof, may be made if such sale or exchange, when considered together with all other sales and exchanges of Partnership Interests, would (in the opinion of counsel for the Partnership, which shall be conclusive for this purpose) result in the termination of the Partnership for the purposes of the then-applicable provisions of the Code.

## ARTICLE XI

### DISSOLUTION AND TERMINATION

11.1 <u>Dissolution</u>. The Partnership shall be dissolved and its affairs wound up upon the first to occur of the following:

(a) the refusal of FCC to approve this Agreement, or the approval by the FCC of this Agreement subject to terms and conditions that are unacceptable to the General Partner and one Limited Partner that is not also the General Partner and the final exhaustion of all available administrative and judicial appeals of such refusal or terms and conditions; or

(b)  the modification of the Cellular Radio Decisions, if such modification materially and adversely affects the Partnership's ability to conduct its business, and the final exhaustion of all available administrative and judicial appeals regarding such modification; or

(c)  the final denial by the FCC of any license required by the Partnership to provide Cellular Service or as contemplated hereby to construct the facilities necessary therefor and the final exhaustion of all available administrative and judicial appeals of any such denial; or

(d)  the final denial by any state or other regulatory authority of any approval or license required by the Partnership to provide Cellular Service or to construct the facilities necessary therefor, or the grant of any such approval subject to terms and conditions that are unacceptable to the General Partner and one Limited Partner that is not also the General Partner, and the final exhaustion of all available administrative and judicial appeals of any such denial or terms and conditions; or

(e)  the unanimous agreement in writing by all the Partners to dissolve and terminate the Partnership and the receipt of any approvals required by the FCC or any other regulatory authority for such dissolution and termination; or

(f)  subject to Section 10.2, the death, insanity, withdrawal, bankruptcy, retirement, resignation or expulsion of any General Partner; or

(g)  the expiration of the term of the Partnership pursuant to Section 2.5; or

(h)  the occurrence of an event that dissolves the Partnership pursuant to the terms of Section 10.2; or

(i)  the occurrence of any other event causing the dissolution of the Partnership under the laws of the State of Illinois.

11.2  <u>Distribution Upon Dissolution.</u>  Upon dissolution of the Partnership, the General Partner shall proceed, subject to the provisions of this Article XI, to liquidate the Partnership and, after the final allocation of Income and Losses, apply the proceeds of such liquidation, or to distribute Partnership assets, in the following order of priority:

(a)  To creditors, including Partners who are creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the Partnership other than liabilities for distributions to Partners under Articles V or IX;

(b)  To the establishment of any reserve which the General Partner may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership.  Such reserve may be paid over by the General Partner to the Northern Trust Bank/Woodfield as escrow agent to be held for disbursement in payment of any of the liabilities described in subsection (a) of this section 11.2 and, at the expiration of such period as shall be deemed advisable by the General Partner, for distribution of the balance, in the manner hereinafter provided in this section 11.2;

- 50 -

(c)  To Partners and former Partners in satisfaction of liabilities of the Partnership for distributions under Articles V and IX;

(d)  to the Partners in the same proportion as the Capital Account of each Partner bears to the total of the Capital Accounts of all of the Partners at the time of such distribution, until the Capital Accounts of all of the Partners are reduced or restored to "zero".

11.3  <u>Distributions in Cash or in Kind.</u>  Upon dissolution, the General Partner may in its discretion (a) liquidate all or a portion of the Partnership assets and apply the proceeds of such liquidation in the priorities set forth in Section 11.2 or (b) hire independent recognized appraisers to appraise the value of Partnership assets not sold or otherwise disposed of (the cost of such appraisal to be considered a debt of the Partnership), and distribute such assets in accordance with the priorities set forth in Section 11.2.  The Partners' Capital Accounts shall be adjusted prior to any such distribution to reflect the Income and Losses allocable to the Partners pursuant to Section 5.3 as a result of such distribution.  The General Partner may determine in its reasonable discretion the manner in which assets distributed in kind will be distributed to the Partners; without limitation of the foregoing, undivided portions of any such asset may be distributed to more than one Partner or any such asset may be distributed in its entirety to one Partner.  The Appraised Value of any assets distributed in kind to a Partner pursuant to this Section 11.3 shall be applied against the amounts distributable to such Partner pursuant to Section 11.2.

- 51 -

11.4  <u>Time for Liquidation.</u>  A reasonable amount of time shall be allowed for the orderly liquidation of the assets of the Partnership and the discharge of liabilities to creditors so as to enable the General Partner to avoid or minimize any losses which otherwise might be incurred.

11.5  <u>Termination.</u>  Upon the dissolution and the commencement of the winding up of the Partnership, the Partnership shall terminate and the General Partner shall execute and cause to be filed a certificate of cancellation of the Partnership pursuant to the Act.

11.6  <u>General Partner Not Liable for Distributions.</u>  The General Partner shall not be liable for any distribution to a Partner required pursuant to subsection (b), (c), or (d) of Section 11.2 and such distribution shall be made solely from available Partnership assets, if any.

11.7 <u>General Partner's Right to Continue to Provide Cellular Service</u>.  Each Limited Partner hereby agrees that, in the event that such Limited Partner withdraws pursuant to Article IX, the General Partner and the remaining Limited Partners shall have the right to provide Cellular Service in the areas in which the Partnership provides, or did provide, Cellular Service, either singly or with others, subject to any necessary regulatory approval.

ARTICLE XII

POWER OF ATTORNEY

12.1  <u>Grant of Power of Attorney.</u>  Each Limited Partner, by its execution hereof, hereby irrevocably constitutes and appoints the General Partner and its successors and assigns as General Partner, with full power of substitution, its true and lawful attorney and agent, in its name, place and stead to make, execute, sign, acknowledge swear to,

- 52 -

file and record on its behalf and on behalf of the Partnership, the following:

(a)  A certificate of limited partnership, a certificate of doing business under an assumed name and any other certificate or instrument or amendment thereof which the Partnership or any of the Partners may be required to file under the laws of the State of Illinois and any other jurisdiction whose laws may be applicable or which the General Partner shall deem it advisable to file; and

(b)  Any certificates or other instruments (including counterparts of this Agreement with such changes as may be required by the law) and all amendments thereto which the General Partner deems appropriate or necessary to qualify, or continue the qualification of, the Partnership as a limited partnership and to preserve the limited liability status of the Limited Partners in the jurisdictions in which the Partnership may own properties, conduct business and acquire investment interests; and

(c)  Any certificates or other instruments which may be required to admit additional or substitute Limited or General Partners pursuant to the terms of this Agreement, to reflect the withdrawal of any Limited Partner, to reflect any increase in the relevant Limited Partner's Capital Contribution by reason of such Limited Partner having made its Second Capital Contribution, any Additional Capital Contribution or any contribution it may make pursuant to Section 4.4, to reflect changes in the respective Percentage Interests of the

- 53 -

Partners, or to effectuate the dissolution and termination of
the Partnership pursuant to Article XI; and

(d)  Any and all amendments to the instruments and
documents described in this Section 12.1, provided such
amendments are either required to be filed, or are consistent
with this Agreement, or have been authorized by the relevant
Limited Partner or Limited Partners; and

(e)  Any and all other instruments and documents which
may be deemed necessary or desirable by the General Partner to
carry out fully the provisions of this Agreement.

12.2  <u>Irrevocable and Coupled With an Interest.</u>  The powers of
attorney granted under Section 12.1 shall be deemed irrevocable and to
be coupled with an interest.

12.3  <u>Survival of Power of Attorney.</u>  The powers of attorney
granted in Section 12.1 shall survive any assignment by a Limited
Partner of the whole or any portion of its Limited Partner's Partner-
ship Interest, except that if such assignment was of all of its Limited
Partner's Partnership Interest and all conditions required for the
admission of the Recipient as a substitute Limited Partner pursuant to
Section 8.5 have been met, the foregoing powers of attorney shall
survive the delivery of such assignment for the purpose of enabling the
General Partner to make, execute, acknowledge, sign, swear to file and
record any and all certificates and other instruments necessary to
effectuate the admission of the Recipient as a Limited Partner and the
withdrawal from the Partnership of the Limited Partner.  Such powers of
attorney shall survive the death, incapacity, dissolution or termination

of a Limited Partner and shall extend to such Limited Partner's successors and assigns.

12.4  <u>Limitation on Power of Attorney</u>.  Except as set forth in this Article XII and in Article XIII, the General Partner may not modify the terms of this power of attorney without the written consent of all the Limited Partners.

ARTICLE XIII

AMENDMENTS

13.1 <u>Amendments</u>.  Other than as authorized in Section 4.11 of this Agreement, this Agreement may not be amended from time to time by the General Partner, without the consent of all Limited Partners, except (a) to add to the representations, duties or obligations of the General Partner or surrender any right or power granted to the General Partner by this Agreement or (b) to cure any ambiguity, to correct or supplement any provision in this Agreement which may be inconsistent with any other provision in this Agreement, to add any other provisions with respect to matters or questions arising under this Agreement which will not be inconsistent with the provisions of this Agreement, or to correct or modify any provision of this Agreement that may be inconsistent with federal income tax law or regulation; provided, however, that no amendment shall be adopted pursuant to this sentence unless the adoption thereof (i) is for the benefit of or not adverse to the interests of the Limited Partners, (ii) does not adversely affect the interest of any Limited Partner in Income or Losses, Tax Profits or Tax Losses or tax credits for federal income tax purposes under Article V or in distributions under Article V, IX or XI and (iii) does not, in the opinion of counsel for the Partnership, by its terms alter the limited liability of

the Limited Partners or the status of the Partnership as a partnership for federal income tax purposes. In the event of any such amendment, the General Partner shall notify the other Partners of such amendment at least ten business days prior to filing.

13.2  <u>Execution of Amended Agreements.</u>  Each Limited Partner agrees to execute or cause to be executed promptly any amendments to this Agreement and corresponding amendments to all certificates or filings of the Partnership reasonably requested by the General Partner and authorized under Section 13.1 or any other provision of this Agreement.

ARTICLE XIV

TECHNOLOGY AND INFORMATION

14.1  <u>Technology License.</u>  The General Partner shall, on behalf of the Partnership, obtain the right to use hardware and software technology associated with Cellular Service. The General Partner is hereby authorized, on behalf of the Partnership, to engage in negotiations and to enter into contracts for licenses to use cellular hardware, software or related processes. In general, such contracts shall be merely right-to-use contracts and will not vest any title in any Partner to this Agreement.

14.2  <u>Proprietary Information.</u>  All information relating to the business of the Partnership and its provision of Cellular Service including but not limited to specifications, microfilm, photocopies, keypunch cards, magnetic tapes, drawings, sketches, models, samples, tools, technical information, data, employee records, maps, customer information, financial reports, and market data marked or identified in writing as proprietary (collectively, "Proprietary Information") furnished to or obtained by a Partner from any other Partner, whether

written or oral or in other form, shall remain the disclosing Partner's property.  All copies of such information whether written, graphic or other tangible form shall be returned to the disclosing Partner upon the disclosing Partner's request except that one copy may be retained for archival purposes.  Unless otherwise agreed, the obligation under this Section 14.2 not to disclose Proprietary Information (a) shall not extend beyond five years from the date of receipt of such information and (b) the obligation does not apply to such Proprietary Information that was previously known to the receiving Partner free of any obliga- tion to keep it confidential or has been or is subsequently made public by the disclosing Partner or a third party.  Such Proprietary Information shall be kept confidential by the receiving Partner and shall be used only to conduct the business of the Partnership and otherwise to fulfill the purposes of this agreement and may be used for such other purposes only upon such terms as may be agreed upon between the disclosing Partner and receiving Partner in writing.

## ARTICLE XV

## MISCELLANEOUS PROVISIONS

15.1  Warranties.  Each Partner warrants as follows:

(a)  It has the power and authority to execute, deliver and perform this Agreement; that all necessary corporate actions to authorize the execution, delivery and performance of this Agreement by such Partner, have been duly taken; that this Agreement has been executed and delivered by duly authorized officials of such Partner; and that this Agreement is and shall be enforceable against such Partner hereto in accordance with its terms.

(b)   This Agreement does not breach any of its existing agreements with other parties.

(c)   In the case of each Limited Partner, it is purchasing its Partnership Interest for long-term investment and it is without present intention of resale or other disposition of such Partnership Interest.

15.2   <u>Table of Contents and Headings.</u>   The table of contents and the headings of the Articles and Sections of this Agreement are inserted for convenience only and shall not be deemed to constitute a part hereof.

15.3   <u>References.</u>   References in this Agreement to Articles, Sections and Appendices are to the articles, sections and appendices of this Agreement, unless otherwise specified.

15.4   <u>Successors and Assigns.</u>   This Agreement shall inure to the benefit of and be binding upon the Partners and any additional or substitute Limited Partner or General Partner and to their respective successors and assigns, except that nothing contained in this Section shall be construed to permit any attempted assignment or other transfer which would be unauthorized by or void pursuant to any other provision of this Agreement.

15.5   <u>Severability.</u>   Every provision of this Agreement is intended to be severable.   If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity of the remainder of the Agreement.

15.6   <u>Waiver.</u>   No provision of this Agreement shall be deemed to have been waived unless such waiver is contained in a written notice given to the Partner claiming such waiver and no such waiver shall be

deemed to be a waiver of any other or further obligation or liability of the Partner or Partners in whose favor the waiver was given.

15.7  Applicable Law.  This Agreement and the rights and obligations of the Partners as such shall be interpreted in accordance with the laws of the State of Illinois, without regard to provisions concerning conflicts of law.  The Partnership will be bound by and fully comply with any applicable provision of the equal employment opportunity law, including any executive orders issued thereunder.

15.8  Entire Agreement.  This Agreement constitutes the entire Limited Partnership Agreement between the Partners and shall supersede all previous negotiations, commitments, representations and writings.

15.9  Notices.  All notices given by any Partner to any other Partner under this Agreement shall be in writing, by registered or certified mail, postage prepaid, addressed as follows (or to such other address as a Partner may specify in such a notice to all other Partners):

General Partner:  Ameritech Mobile Phone Service of
                  Illinois, Inc.
                  1515 Woodfield Road, 14th Floor
                  Schaumburg, Illinois 60173
                  Attention:  General Counsel

Limited Partners:  Inland Cellular Telephone Co.
                   1400 West Anthony Drive
                   Post Office Box 3000
                   Champaign, Illinois  61281
                   Attention:  President

                   Mt. Pulaski Cellular Company
                   228 South Chicago Street
                   Post Office Box 100
                   Lincoln, Illinois  62656
                   Attention:  President

U S West NewVector Group, Inc.
3350 161st Avenue, S.C.
Bellevue, Washington  98008-1329
Attention:  General Counsel


Midwest Cellular Associates
121 South Seventeenth Street
Mattoon, Illinois  61938
Attention:  President


Such notices shall be effective on the third business day subsequent to the date of mailing.

15.10  _Arbitration._  (a)  In case any disagreement with respect to Section 9.2(b) 1.4, or 1.7 that cannot be resolved by negotiation, shall arise between any Limited Partner or group of Limited Partners and the General Partner, the General Partner or such Limited Partner or group of Limited Partners may initiate proceedings to submit such disagreement to arbitration by serving written notice of arbitration on the other party, which notice shall include appointment of an arbitrator, naming such arbitrator.  Within thirty days after the date that such notice is effective the Partner (or group of Partners, if applicable) to whom such notice is given shall similarly appoint an arbitrator by giving like written notice to the initiating Partner or Partners; or, failing to make such appointment, the arbitrator initially appointed shall be empowered to act as the sole arbitrator and to render a binding decision.  In such event, such sole arbitrator shall set a date for hearing the dispute not later than ninety days after the date of his appointment and shall render its decision in writing to the disputing Partners not later than sixty days after the last hearing date.

(b)  In the event that the disputing Partners duly appoint arbitrators pursuant to Section 15.10(a) the two arbitrators so appointed shall, within thirty days after the appointment of the later of them to be appointed, select a third arbitrator who shall act as Chairman of the arbitration panel.  Such arbitration panel shall set a time for the hearing of the dispute which shall not be later than sixty days after the date of appointment of the third arbitrator, and the final decision of the arbitrators shall be rendered in writing to the disputing Partners not later than sixty days after the last hearing date.

(c)  In the event that the two arbitrators appointed by the disputing Partners are not able within thirty days after the appointment of the later of them to be appointed to agree on the selection of a third arbitrator, either one of them may request the American Arbitration Association to select a third arbitrator, and the selection of such third arbitrator by such Association shall be binding.

(d)  The place of any arbitration shall be in Chicago, Illinois, or at such other place as agreed to by the disputing Partners.

(e)  The arbitration shall be conducted in accordance with the rules of the American Arbitration Association then prevailing, and the decision of the arbitrator or arbitrators, as the case may be, shall be final and binding on the disputing Partners, and shall be enforceable in the courts of every state and of the United States.

15.11  Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be considered an original.

IN WITNESS WHEREOF, the undersigned have caused this
Agreement to be duly executed by their duly authorized
representatives as of the date first above written.


General Partner:
AMERITECH MOBILE PHONE SERVICE
OF ILLINOIS, INC.

Attest: _____    By: _____
Title: _____     Title: _____

**Limited Partner:**
**INLAND CELLULAR TELEPHONE CO.**

Attest: _____

Title: _____

By: _____

Title: _____

Limited Partner:
MT. PULASKI CELLULAR COMPANY

Attest: _____  By: _____
Title: SECRETARY              Title: PRESIDENT

Limited Partner:
U S WEST NewVector Group, Inc.

Attest: _____     By: _____
          John P. Scully,                   John E. DeFeo
          Assistant Secretary               President

Limited Partner:
MIDWEST CELLULAR ASSOCIATES,
an Illinois General Partnership
By:  ILLINOIS CONSOLIDATED
MOBILE COMMUNICATIONS, INC.,
Managing Partner

Attest: _C.R. Chaplin_    By: _T.A. Lumpp_
    Title: _SECRETARY_    Title: _President_

## ALLOCATION OF COSTS

I.  Determination of allocable expenses

Total AMCI[**] expenses computed on a GAAP basis
LESS:  Expenses related to new business ventures[*]

Expenses related to cellular operations
LESS:  Expenses charged directly to specific CGSAs[*]

Overhead expenses allocable to CGSAs

II. Allocation Formula

| Department | Methodology |
|---|---|
| Public Relations | SMSA Population Proportion |
| Regulatory | Equal Proportion |
| Exec & Legal | Equal Proportion |
| Marketing | SMSA Population Proportion |
| Network | Cell Site Proportion |
| Controller | Equal Proportion |
| Treasurer | SMSA Population Proportion |
| MIS | SMSA Population Proportion |
| Personnel | Two Step Allocation:  1) Allocate to above departments based on number of people; 2) Allocate using the respective department methodology. |

---

[**] Pursuant to article 6.10 of the Partnership Agreement, Ameritech Mobile Phone Service of Illinois, Inc. will enter into an agreement with Ameritech Mobile Communications, Inc. relating to the provision of administrative and management services to the Partnership.

[*] Identifiable through direct coding on invoices using center codes apart from headquarters.

- 67 -

III. Definitions of Allocation Methodologies

SMSA Population Proportion – The SMSA population for Central Illinois is divided by the SMSA population for all markets to be served by Ameritech Mobile Communications.

Equal Proportion (1/N) – Each of the major markets to be served by Ameritech Mobile Communications shares equally in the expenses.

Cell Sites Proportion – For the indicated year, the number of year-end cells for the Central Illinois system is divided by the total number of year-end cells for all markets served by Ameritech Mobile Communications, Inc.