E-FILED
Friday, 04 February, 2005  02:49:35 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA/DANVILLE DIVISION

| | |
|---|---|
| CASS TELEPHONE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 04-2185 |
| | ) |
| MCLEODUSA HOLDINGS, INC., and | ) |
| MCLEODUSA TELECOMMUNICATIONS, | ) |
| INC. | ) |
| | ) |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO MCLEODUSA'S MOTION TO DISMISS
PLAINTIFF'S COUNT III OF ITS FIRST AMENDED COMPLAINT**

**INTRODUCTION**

The issue before the court is whether Count III of Cass Telephone Company's ("Cass" or "Plaintiff") First Amended Complaint against MCLEODUSA Telecommunications, Inc. ("MUSATS") for tortious interference with Cass' business expectations fails as a matter of law because MUSATS is a subsidiary of McLEODUSA Holdings, Inc. ("McLeod"). The Defendants do not contend Plaintiff failed to plead the requisite elements of a tortious interference claim. They instead argue Plaintiff's claim fails, as a matter of law, because McLeod and MUSATS are essentially "one entity" and that MUSATS is therefore legally incapable of tortiously interfering with Cass' business expectations. For reasons more fully detailed below, the Defendants' motion must be denied.

1

## ARGUMENT

I.  **Defendants' Motion To Dismiss Count III Must Be Denied Because Defendants Have Failed To Establish No Relief Can Be Granted Under Any Set Of Facts**

A court may grant a motion to dismiss for failure to state a claim "only if 'it is clear that no relief could be granted under any set of facts that could be provided consistent with the allegations of the complaint.'" Cook v. Winfrey, 141 F.3d 322, 327 (7th Cir. 1998)(quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).  When considering such motion, the court must assume all well-pleaded facts are true and draw all reasonable inferences in the light most favorable to the plaintiff.  Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir. 1990).  Moreover, the court's task in considering a motion to dismiss is limited to testing the sufficiency of the complaint, and not deciding the merits.  Id.

Under the Federal Rules of Civil Procedure, the complaint should be "short and plain" and it suffices if it notifies the defendant of the principle events.  Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003). Dismissal is likely only when the complaint shows some bar to relief on its face.  Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, 25 F.3d 417, 421, n. 6 (7th Cir.1994).  A plaintiff is not required under Rule 8 to plead each element of a tortious interference claim with factual specificity and conclusory factual allegations are permissible.  Jamison v. UGN, Inc., 2003 WL 22715810, p. 3 (N.D. Ill. 2003)(citing Shah v. Inter-Continental Hotel Chicago Operating Corp., 314 F.3d 278, 282 (7th Cir. 2003); Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998)); Schnusenberg v. University of Chicago, 1996 WL 451313 (N.D. Ill. 1996).  See also

Constantino v. Morningstar, Inc., 2004 WL 842508 (N.D. Ill. 2004)(tortious interference claim containing conclusory factual allegations satisfied liberal pleading requirements); V&V Supremo Foods, Inc. v. Sloan Acq. Corp., 2002 WL 1759787 (N.D. Ill. 2002); Skolnick v. Correctional Med. Services, Inc., 1999 WL 1032782 (N.D. Ill. 1999).

    **A.    Defendants' Argument That, As A Matter Of Law, MUSATS Cannot Be Liable For Tortious Interference With Business Expectations Is Legally Unsupported**

To establish a claim of tortious interference with business expectation, a plaintiff must prove the following elements: 1) a valid business expectancy; 2) defendant's knowledge of the expectancy; 3) defendant's intentional interference with the prospective business relationship and prevention of its realization; and 4) damage to the plaintiff. Fellhauer v. City of Geneva, 142 Ill.2d 495, 510-13, 568 N.E.2d 870 (1991). Defendants do not contend Plaintiff failed to adequately plead these elements. They instead argue that a subsidiary and a parent are essentially "one entity" and, therefore, a subsidiary cannot be liable for tortious interference with business expectations between a plaintiff and a subsidiary's parent. (See Def. Brief, p. 5).

A similar argument was asserted and rejected in Peacock v. General Motors Acceptance Corp., 432 So.2d 142 (Fla. Ct. App. 1983). In Peacock, the plaintiffs sued subsidiary GMAC for tortious interference with business relationships between the plaintiff and GM. GM was the parent of GMAC. Id. at 143. GMAC contended it was in such privity with GM, as its wholly owned subsidiary, that GMAC was also a party to the contract with the plaintiffs. The court rejected this argument, stating:

> We reject GMAC's reasoning and hold that ***GMAC's subsidiary relationship to GM does not in itself negate the possibility of GMAC's having intentionally interfered with Peacock's and Peacock Chevrolet's business relationships with GM.*** GMAC is a distinct legal entity, and its

3

> being a wholly owned subsidiary of GM does not alter that status . . . GMAC does not claim, much less has it established that GM's control is such that GMAC is but an instrumentality of the parent GM. . . Absent a piercing of the corporate veil, GM could not be held accountable for GMAC's tortious acts . . . ***If GMAC's tortious acts would not ordinarily subject its parent to liability, it can hardly be argued in the same circumstances that GMAC's relationship to GM immunizes GMAC from separate liability on account of tortiously interfering with GM's contracts with third persons.***

Id. at 143 (emphasis added).  See also Phil Crowley Steel Corp. v. Sharon Steel Corp., 702 F.2d 719, 721-722 (8th Cir. 1983)(court reversed district court's determination that a parent of a subsidiary could not be a third party for purposes of a tortious interference claim).

Although the Peacock decision is admittedly not binding on this court, it provides persuasive guidance.  Like the defendant in Peacock, the defendants contend McLeod and MUSATS should be considered one entity for purposes of a tortious interference claim. This argument must fail because, as in Peacock, a parent and its subsidiary are two separate and distinct corporate entities under Illinois law.  Daley v. American Drug Stores, 294 Ill.App.3d 1024, 691 N.E.2d 846, 849 (1st Dist. 1998). Before "the separate corporate identity of one corporation will be disregarded and treated as the alter ego of another, it must be shown that it is so controlled and its affairs so conducted that it is a mere instrumentality of another, and it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice." People ex rel. Scott v. Pintozzi, 50 Ill.2d 115, 128-29, 277 N.E.2d 844 (1971). A parent and its subsidiary cannot establish a separate identity under state corporate laws, and subsequently assert such separate existence does not exist for purposes of avoiding a tortious interference claim. See Knickman v. Midland Risk Services-Illinois, Inc., 298

4

Ill.App.3d 1111, 700 N.E.2d 458 (4th Dist. 1998)(recognizing parent could not have asserted alter ego theory to avoid a tortious interference claim). See also Kontos v. Boudros, 241 Ill.App.3d 198, 608 N.E.2d 573, 576 (2nd Dist. 1993)(a defendant "cannot choose when to disregard the corporate form or business at his own convenience"); Stamp v. Inamed Corporation, 777 F. Supp. 623, 627 (N.D. Ill. 1991)(refusing to disregard the corporate separateness of a wholly-owned subsidiary, stating the parent "cannot reap the benefits of incorporation while at the same time side-stepping its reciprocal pit-falls").

Plaintiff does not contend MUSATS is the alter ego of McLeod. To the contrary, Plaintiff alleges McLeod is a Delaware Corporation, and that MUSATS is an Iowa Corporation and subsidiary of McLeod. (See Pl. First Amended Complaint, para. 3, 15). The Defendants' argument that Plaintiff plead MUSATS was not a "stranger" to the business expectation in paragraphs 17 and 37 of the First Amended Complaint is fatally flawed because (1) Count III of the First Amended Complaint for tortious interference with business expectations did not incorporate the averments in paragraphs 17 and 37, and (2) even if included, those averments would not foreclose a tortious interference claim against MUSATS.[1]

None of the cases cited by Defendants hold the identities of separate corporations are ignored in tortious interference claims. These cases suggest, at best, that a parent corporation having an economic interest in the business of its subsidiary may be

---

[1] In particular, MUSATS tortiously interfered with business expectations when it provided Cellular Services within the Territory. McLeod breached its contract with, and its fiduciary duty to, Cass when it failed to take any action to prevent MUSATS' conduct and instead elected to offer Cellular Services through MUSATS within the Territory. Plaintiff also does not allege that MUSATS was McLeod's agent. Such allegation, even if made, would not be fatal because "a claim for tortious interference may lie where the agent's actions in interfering with the principal's contract are unjustified. . ." Storm & Associates, LTD., Cuculich, 298 Ill.App.3d 1040, 700 N.E.2d 202, 210 (1st Dist. 1998).

5

privileged under some circumstances to interfere with its subsidiary's business expectations. This "economic interest" privilege is set forth in the Restatement (Second) Torts 769, as follows:

> One who, ***having a financial interest in the business of a third person*** intentionally causes that person not to enter into a prospective contractual relation with another, does not interfere improperly with the other's relation if he
>
> (a) does not employ wrongful means and
> (b) acts to protect his interest from being prejudiced by the relation.

(emphasis added). Application of the privilege is not automatic; a defendant claiming the privilege must establish its actions were taken to further that economic interest. Ives v. Guilford Mills, Inc., 3 F.Supp.2d 191, 198 (N.D. N.Y. 1998)(motion to dismiss denied because defendants had failed to establish actions were taken to protect their economic interest). Comment "c" to Section 769 further provides that the financial interest referred to is "an interest in the nature of an investment", such as a "stockholder." RESTATEMENT (SECOND) TORTS 769, cmt "c".

The economic interest privilege does not even apply in this case because there is no allegation that any parent corporation tortiously interfered. To the contrary, Cass alleges tortious interference by a subsidiary. There is no allegation MUSATS is a shareholder of, or has any financial interest, in McLeod. No basis for application of the "economic interest" privilege exists and the Defendants have not cited any case law supporting the existence of such a "subsidiary" privilege.

The case law cited by Defendants also does not support the proposition that, as a matter of law, a parent cannot be considered a stranger or third party for purposes of a tortious interference claim. In Oak Agency v. Warrantech Corp., 1997 WL 232619 (N.D.

6

Ill. 1997), the court was asked to grant summary judgment on a claim that a ***parent*** tortiously interfered with a subsidiary's contract.  The court noted the parent was "privileged to act in its subsidiary's economic interest . . . absent some egregious conduct. . ." Id. at 2.  The court went on to acknowledge that a parent may be liable for tortious interference with a subsidiary's contract under the right set of facts.  Id. (court noted plaintiff could have avoided summary judgment of a claim against parent for tortious interference with a subsidiary's contract had evidentiary support been available).

Defendants' reliance on Belmont Associates v. Fortis, Inc., 1996 WL 448083 (N.D. Ill. 1996) is also misplaced.  The plaintiff in Belmont contended a ***parent*** tortiously interfered with a subsidiary's contract.  The defendant parent sought dismissal on the grounds that it was a party to the contract because the actual party to the contract was its wholly owned subsidiary.  The court rejected this argument, stating "we agree with [plaintiff] that [parent] was not a party to the contract simply by virtue of being [the subsidiary's] parent corporation.  Id. at 4.  The tortious interference claim was dismissed because plaintiff failed to plead the other requisite elements of a tortious interference claim, and not because the defendant was the parent of the contractual party.  Id. at 5. Additional cases cited by the Defendants actually support the proposition that a parent can be liable for tortious interference with a subsidiary's contract or business expectancies.  Boulevard Associates v. Sovereign Hotels, Inc., 72 F.3d 1029, 1037(2nd Cir. 1995)(court recognizes there may be some circumstances when a parent may be liable for tortiously interfering with a subsidiary's contract); Deuville Corp. v. Federated Department Stores, Inc., 756 F.2d 1183, 1196 (5th Cir. 1985)(finding under Texas law a parent may be privileged to interfere with a subsidiary's contract);Canderm Pharmacal,

Ltd. V. Elder Pharmaceuticals, Inc., 862 F.2d 597 (6th Cir. 1988)(same).  Other courts agree that a parent corporation is legally capable of tortiously interfering with its subsidiary's contractual relations.  See, e.g., Valores Corp. v. McLane Co., 945 S.W.2d 160, 168 (Tex. Ct. App. 1997).

Defendants also contend their theory is supported by Federal case law (including Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 104 S. Ct. 2731, 81 L.Ed.2d 628 (1984)) which holds a parent and its "wholly-owned subsidiary" cannot conspire for purposes of the Sherman Act and RICO.[2]  (See Def. Brief, page 5).  This argument fails because (1) there is no allegation MUSATS is a wholly-owned subsidiary[3] of McLeod, and (2) Defendants have failed to establish the Copperweld doctrine applies to claims under Illinois common law, and in particular to tortious interference claims.

Illinois courts have in fact recognized Copperweld is not applicable in the common law setting.  In rejecting the application of Copperweld to a breach of contract claim by a subsidiary against a parent, the Northern District of Illinois in Stamp stated:

> In Copperweld, the Supreme Court held that a wholly-owned subsidiary and parent are incapable of conspiring with each other under section 1 of the Sherman Antitrust Act. . . The key to the Court's reasoning, however, was its focus on the underlying concern of the Sherman Act which is to prohibit the concerted activity of 'two independent sources of economic power [that] previously pursue[ed] separate interests. . . Our conclusion is entirely consistent with the Copperweld decision.  ***We do not hold that a wholly-owned subsidiary has a separate economic agenda than its parent.  We merely conclude that they are independent entities, each worthy of recognition here.***  Therefore, Copperweld does not require dismissal.

---

[2] Defendants cite Travis v. Gary Community Mental Health Center, Inc., 921 F.2d 108 (7th Cir. 1991) to support the proposition that a subsidiary is not a third party to a parent.  The court in Travis addressed the issue of whether corporate employees could be treated as conspirators.  The court did not address the issue of whether a subsidiary was a "third party to parent".

[3] Plaintiff has not plead that MUSATS is a wholly-owned subsidiary of McLeod.  For purposes of a motion to dismiss, the court must assume all well-pleaded facts are true and draw all reasonable inferences in the light most favorable to the plaintiff.

777 F. Supp. at 628 (emphasis added). See also In re Conticommodity Services, Inc., Securities Litigation, 733 F. Supp. 1555, 1568 (N.D. Ill. 1990)(recognizing Copperweld was limited to context of antitrust actions), rev'd in part on other grounds sub nom. Brown v. United States, 976 F.2d 1104 (7th Cir. 1992) and aff'd in part on other grounds sub nom ContiCommodity Servs. Inc. v. Ragan, 63 F.3d 438 (5th Cir. 1995), cert. denied, 517 U.S. 1104(1996); Ashlar Financial Services Corp., 2002 WL 206439, p. 6 (N.D. Tex. 2002)(rejecting application of Copperweld to tortious interference claim); Shared Communication Services of 1800-80 JFK Blvd. Inc. v. Bell Atlantic Prop. Inc., 692 A.2d 570, 573 (P.A. Super. 1997)(refusing to extend Copperweld to common law conspiracy claims).

    Defendants have failed to establish dismissal of Count III is warranted in this case. Plaintiff has plead the requisite elements of a claim for tortious interference with business expectations. The Defendants' argument that a subsidiary cannot tortiously interfere, as a matter of law, is legally unsupported. Defendants have cited no case law that holds a *subsidiary* is privileged to interfere and that liability for such interference is foreclosed, as a matter of law. Nor have Defendants cited any case law that suggests the court can disregard the distinct corporate identities of MUSATS and McLeod for purposes of a tortious interference claim. Case law from the Illinois federal and state courts, in fact, warrants a finding that MUSATS and McLeod are separate legal entities and that MUSATS is capable of tortiously interfering notwithstanding its status as a subsidiary of McLeod.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Plaintiff respectfully requests that the court enter an order denying Defendants' Motion to Dismiss Count III of the First Amended Complaint.

    Respectfully submitted,

    CASS TELEPHONE COMPANY,
    Plaintiff,

    By:   Meyer Capel, A Professional Corporation

    s/Keith E. Emmons
    Keith E. Emmons (#0739219)
    Meyer Capel, A Professional Corporation
    306 West Church Street
    P. O. Box 6750
    Champaign, IL 61826-6750
    Telephone: 217/352-1800
    Fax: 217/352-1083
    E-mail: kemmons@meyercapel.com