E-FILED
Thursday, 14 April, 2005  01:26:45 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | | |
|---|---|---|
| **CASS TELEPHONE COMPANY,** ) | | |
| an Illinois corporation, ) | | |
| Plaintiff, ) | | |
| v. ) | | |
| ) | | Case No. 04-2185 |
| **MCLEODUSA HOLDINGS, INC.,** ) | | |
| an Iowa corporation, ) | | |
| Defendant. ) | | |

## REPORT AND RECOMMENDATION

In January 2005, Plaintiff, Cass Telephone Co., filed a First Amended Complaint (#31) against Defendants, McLeodUSA Holdings, Inc., and McLeodUSA Telecommunications Services, Inc., alleging breach of contract, breach of common law fiduciary duty, tortious interference with business expectation, and seeking an accounting under the Illinois Uniform Partnership Act (805 ILCS 205/21). In January 2005, Defendants filed a Motion To Dismiss Plaintiff's Count III of Its First Amended Complaint (#28). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendants' Motion To Dismiss Plaintiff's Count III of Its First Amended Complaint **(#28)** be **DENIED**.

### I.  Background

The following background is taken from the complaint. Plaintiff, Cass Telephone Co. (hereinafter "Cass"), is an Illinois corporation with its principal place of business in Cass County, Illinois. Defendant, McLeodUSA Holdings, Inc. (hereinafter "McLeod"), is a Delaware corporation with its principal place of business in Iowa. Defendant, McLeodUSA Telecommunications Services, Inc. (hereinafter "MUSATS"), is an affiliate and subsidiary of McLeod and does business in Champaign County, Illinois.

In 1986, Cass and Illinois Consolidated Mobile Communications, Inc., entered into an agreement (hereinafter "MCA agreement"). McLeod later succeeded to the interests of Illinois Consolidated Mobile Communications, Inc., in the MCA agreement.

The MCA agreement establishes Midwest Cellular Associates (hereinafter "MCA"), a general partnership formed to acquire, own, and sell an interest in Illinois SMSA Limited Partnership (hereinafter "ILLSMSA"). ILLSMSA operates cell towers and, doing business as Verizon Wireless, operates a retail outlet in Champaign County and provides services to cellular customers in Champaign County.

Defendant McLeod owned ninety-five percent of the MCA partnership and Plaintiff owned five percent of the MCA partnership. The MCA agreement designated McLeod the managing partner of MCA. Section 7.1 of the MCA agreement provides as follows: "The Managing Partner will at all times act in a fiduciary capacity and in the best interests of the Partnership." Section 7.7 of the MCA agreement provides, in relevant part, as follows:

> Except as permitted above, neither the Managing Partner nor any Affiliates thereof shall be permitted, directly or indirectly, to provide Cellular Service or engage in the sale or lease of terminal equipment used in connection therewith in competition with the Partnership in any area in which the Operating Partnership [ILLSMSA] is providing or is licensed to provide Cellular Service.

On October 28, 2003, McLeod sent a notice to Robert Allgood, the general partner of ILLSMSA, stating as follows:

> McLeodUSA Telecommunications Services, Inc., an Affiliate of MCA Cellular Associates and a subsidiary of its Managing Partner, is in the process of offering Cellular Services within the Territory and therefore must withdraw from the Partnership pursuant to Section 6.12 of the Agreement, and triggering the voluntary withdrawal provision of Section 9.1 of the Agreement.

(Letter dated October 28, 2003, attached to Complaint as Exhibit C.) McLeod's website confirmed that it was already offering cellular services on the date of the letter and therefore it had clearly undertaken business activities necessary to offer cellular services by the time it sent the letter.

2

Plaintiff alleges that, by unilaterally choosing to offer cellular services through MUSATS without prior disclosure to Cass, McLeod breached the MCA agreement and breached its fiduciary duty to Cass. Furthermore, Plaintiff alleges that MUSATS, by inducing McLeod to breach the MCA agreement, tortiously interfered with Cass's business expectations arising out of its relationship with McLeod.

Plaintiff's complaint alleges breach of contract (Count I), breach of common law fiduciary duty (Count II), and tortious interference with business expectation (Count III), and seeks an accounting of all transactions, profits, and benefits that McLeod derived from MUSATS (Count IV).

## II. Standard of Review

When considering a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the claims, and draw all reasonable inferences in the light most favorable to the nonmoving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997). The Court should dismiss the case only if the nonmoving party can prove no set of facts consistent with the allegations of the complaint that would entitle him to relief. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319-20 (7th Cir. 1997).

## III. Analysis

Defendants argue that the Court should dismiss Count III because a party cannot tortiously interfere with business expectations arising out of its own relationship, and MUSATS, as a subsidiary of McLeod, is not a third party to the relationship between Cass and McLeod.

Defendants correctly state that tortious interference can only be asserted against a third party to an expectancy relationship. *Bass v. SMG, Inc.*, 765 N.E.2d 1079, 1090 (Ill. App. Ct. 2002); *Quist v. Bd. of Trs.*, 629 N.E.2d 807, 811 (Ill. App. Ct. 1994). Indeed, when it previously recommended dismissing Cass's original tortious interference claim against McLeod, this Court stated, "McLeod cannot be liable for tortious interference . . . for the simple reason that McLeod was a party to those agreements." (Report and Recommendation, #20, p. 6). However,

Defendants are mistaken in stating that a subsidiary can never be a third party to an expectancy relationship with the parent corporation.

To establish that a parent and subsidiary are a single entity for purposes of tortious interference, Illinois law requires a piercing of the corporate veil. *MASA Inc. v. ICG Keeprite Corp.*, No. 88 C 2133, 1990 WL 165306, *1-2 (N.D. Ill. Oct. 24, 1989). To pierce the corporate veil, "it must be shown that [the subsidiary] is so controlled and its affairs so conducted that it is a mere instrumentality of another, and it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice." *Main Bank of Chicago v. Baker*, 427 N.E.2d 94, 101-02 (Ill. 1981) (citing *People ex rel. Scott v. Pintozzi*, 277 N.E.2d 844 (Ill. 1971); *Dregne v. Five Cent Cab Co.*, 46 N.E.2d 386 (Ill. 1943); *Superior Coal Co. v. Dep't of Finance*, 36 N.E.2d 354 (Ill. 1941)). To determine whether a subsidiary is sufficiently controlled by a parent to allow piercing the corporate veil, courts consider the following: (1) the failure to maintain adequate corporate records or to comply with corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) one corporation treating the assets of another corporation as its own. *Van Dorn Co. v. Future Chem. and Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985) (citing *Main Bank of Chicago*, 427 N.E.2d at 102). Furthermore, because a corporation derives advantages from the fiction that parent and subsidiary are separate legal entities, courts are reluctant to permit a corporation to pierce its own corporate veil to avoid liability. *See Hughey v. Hoffman Rosner Corp.*, 440 N.E.2d 1049, 1051 (Ill. App. Ct. 1982); *Bevelheimer v. Gierach*, 339 N.E.2d 299, 303 (Ill. App. Ct. 1975). Thus, whether McLeod and MUSATS are one or two corporate entities for purposes of this suit is a factual question and improper grounds for dismissal.

Defendants cite several cases that have held a parent was not liable for tortiously interfering with its own subsidiary's business relations. However, those cases did not base their holdings on the defense that parent and subsidiary were one entity. Rather, they found that the parent was privileged to interfere with the subsidiary's business relations. *See Oak Agency, Inc. v. Warrantech Corp.*, No. 96 C 1106, 1997 WL 232619, *2 (N.D. Ill. May 2, 1997); *Boulevard*

4

*Assocs. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1037 (2d Cir. 1995); *Deauville Corp. v. Federated Dep't Stores, Inc.*, 756 F.2d 1183, 1196-97 (5th Cir. 1985); *Canderm Pharmacal, Ltd. v. Elder Pharm., Inc.*, 862 F.2d 597, 601 (6th Cir. 1988). Indeed, Defendants' own cited authority rejects the argument that a parent and subsidiary should always be treated as one entity for purposes of tortious interference claims. *See Belmont Assocs. v. Fortis, Inc.*, No. 95 C 6028, 1996 WL 448083, *5 (N.D. Ill. Aug. 2, 1996) ("We agree with [plaintiff] that [defendant] was not a party to the contracts simply by virtue of being [the subsidiary's] parent corporation."). The defenses of privilege and singular identity are separate and distinct. The Court need not address whether MUSATS was privileged to interfere with the business expectancy relationship between Cass and McLeod because Defendants do not claim their acts were privileged.

Defendants also argue that Plaintiff has plead itself out of court by alleging in Counts I and II that McLeod and MUSATS acted in concert with each other. Defendants claim that this position is inconsistent with the position Plaintiff takes in Count III, that MUSATS was a third party to the business expectancy relationship between McLeod and Plaintiff. It would indeed be unfair to treat McLeod as the alter ego of MUSATS for the breach of contract claim and then treat the two companies as separate entities for purposes of the tortious interference claim. Furthermore, Plaintiff is permitted to plead in the alternative and each count need not be consistent with all other counts. FED. R. CIV. P. 8(e)(2). Plaintiff does not have to use magic words to indicate it is pleading in the alternative; it must only use a formulation from which it can reasonably be inferred that Plaintiff intends to plead in the alternative. *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000). Had Plaintiff incorporated into its tortious interference count paragraphs alleging that McLeod controlled MUSATS, then dismissal would be appropriate. *See Purizer Corp. v. Battelle Mem'l Inst.*, No. 01 C 6360, 2002 WL 22014, *5 (N.D. Ill. Jan. 7, 2002). However, Plaintiff merely states that "MUSATS is an Affiliate and subsidiary of McLeod." (First Amended Comp., #31, ¶ 15). This is not inconsistent with its tortious interference claim. Defendants cite Plaintiff's allegations in Paragraph 17, but this paragraph was not incorporated into Count III. Thus, Plaintiff has not undermined its tortious interference claim by alleging inconsistent facts.

## IV. Summary

For the reasons set forth above, the Court recommends the Defendants' Motion To Dismiss Plaintiff's Count III of Its First Amended Complaint **(#28)** be **DENIED**. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 14th day of April, 2005.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE