**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA/DANVILLE DIVISION**

| | |
|---|---|
| CASS TELEPHONE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04-2185 |
| ) | |
| MCLEODUSA HOLDINGS, INC. and ) | |
| MCLEODUSA TELECOMMUNICATIONS ) | |
| SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMROANDUM IN SUPPORT OF OBJECTION TO APRIL 14, 2005
REPORT AND RECOMMENDATION REGARDING COUNT III**

Pursuant to Fed. R. Civ. P. 72(a) and Local Rule 72.2(A), Defendants McLeodUSA Holdings, Inc. ("McLeodUSA") and McLeodUSA Telecommunications Services, Inc. ("MUSATS") respectfully object to the April 14, 2005 Report and Recommendation (the "R&R") of Magistrate Judge Bernthal in this matter. In support of their objection, defendants state as follows.

**Introduction**

McLeodUSA respectfully submits that the April 14 R&R is mistaken and incorrectly applies the law in declining to dismiss Count III of Cass' amended complaint. Neither Cass nor the April 14 R&R have identified any single Illinois case upholding Cass' novel theory that a wholly owned corporate subsidiary (MUSATS) could somehow tortiously interfere with the business relationships of the corporate parent (McLeodUSA) that owns and controls it. Even if one could imagine peculiar circumstances in which a subsidiary might theoretically coerce or lure its own parent, the undisputed facts of this case (as pleaded by Cass) lend no support to Cass' Count III. The very partnership agreements that underlie all of Cass'

claims treat McLeodUSA and its subsidiaries together as joint actors—not as interfering strangers as Cass contends. Cass' tortious interference claim thus defies common sense, is unsupported by any Illinois authority, and serves as mere makeweight in its complaint, which already contains breach of contract and breach of fiduciary duty claims covering virtually the same conduct. For those reasons, and as further described below, the Court should set aside the April 14 R&R and dismiss Cass' Count III.

## Background

### Cass' Allegations and Initial Complaint

This case concerns McLeodUSA's 2003 decision to withdraw from a partnership with Cass. McLeodUSA and Cass are telephone companies. (Docket No. 31, Amended Complaint ("Am. Compl.") ¶¶ 14-17.) The partnership between Cass and McLeodUSA was known as Midwest Cellular Associates (the "MCA Partnership"). (*Id.* ¶¶ 3-4.) The MCA Partnership held an interest in a larger partnership (the "SMSA Partnership") which provided cellular telephone service in central Illinois. (*Id.* ¶¶ 5-6.)

As pleaded by Cass, Cass and McLeodUSA agreed in the MCA Partnership Agreement not to provide separate cellular telephone services that would compete with the services provided by the SMSA Partnership. (*Id.* ¶ 13.) In October 2003, however, McLeodUSA began to offer separate cellular services through its subsidiary, MUSATS, and told Cass that it would withdraw from the partnerships. (*Id.* ¶¶ 14-15.) Cass objected to that decision and sued McLeodUSA. In its initial complaint, Cass asserted claims for breach of contract (Count I), breach of fiduciary duty (Count II), and for a partnership accounting (Count IV.) (*See* Docket No. 1, Ex. 1, Initial Complaint.)

Cass also asserted a claim for tortious interference with business expectation, claiming that by offering competing cellular service through MUSATS, McLeodUSA had tortiously interfered with Cass' expectancies in the partnership agreements. (*Id.* ¶¶ 41-59.) McLeodUSA moved to dismiss, pointing out that a party cannot, as a matter of law, be held to have interfered with its own business relations with the plaintiff. (Docket No. 8.) Judge Bernthal agreed, holding that Cass had failed to state a claim for tortious interference because "[i]t is well settled that a party cannot tortiously interfere with his *own* contract; the tortfeasor must be a third party to the contractual relationship." (Docket No. 20, Report and Recommendation at 6-7, emphasis added.) The Court accepted Judge Bernthal's Report in its December 27, 2004 Order and dismissed Cass' Count III without prejudice. (Docket No. 21.)

**Cass' Amended Complaint and the April 14 R&R**

On January 10, 2005, Cass sought to revive its dismissed Count III by essentially restating the same claim but changing the name of the defendant from McLeodUSA to MUSATS. (*See* Am. Compl. ¶¶ 40-61.) Thus, rather than arguing that McLeodUSA had tortiously interfered with its own business relations, Cass now contends that McLeodUSA's subsidiary MUSATS had caused its own parent McLeodUSA to withdraw from its relations with Cass and the partnerships. (*Id.*)

McLeodUSA moved to dismiss Cass' amended Count III on January 24, 2005. (*See* Docket No. 29.) As McLeodUSA explained, Cass' superficial change in substituting MUSATS for McLeodUSA did not remedy the underlying defect in Cass' tortious interference theory. (*Id.* at 4-6.) Put simply, there is no basis to consider MUSATS as an interfering stranger in the relationship between its own parent McLeodUSA and Cass. (*Id.*) As a subsidiary of McLeodUSA, there is no conceivable interpretation of the facts pleaded in the complaint under

3

which MUSATS could coerce or induce its own corporate parent McLeodUSA to breach obligations to Cass. (*Id.*) Moreover, the entire thrust of Cass' complaint is that McLeodUSA breached its obligations by offering competing cellular service *through* MUSATS. Cass, now arguing that MUSATS was actually an interfering third-party, is trying to have it both ways.

Cass responded to McLeodUSA's motion on February 4, 2005. (Docket No. 35.) Nowhere in its response, however, did Cass identify a single Illinois case supporting the proposition that a corporate subsidiary can be considered a third-party with the power to force its own corporate parent to breach obligations for purposes of a tortious interference claim.

Judge Bernthal nonetheless denied McLeodUSA's motion in the April 14 R&R. Judge Bernthal agreed that "tortious interference can only be asserted against a third party to an expectancy relationship." (April 14 R&R at 14.) Judge Bernthal also recognized that "[i]t would indeed be unfair to treat McLeod as the alter ego of MUSATS for the breach of contact claim and then treat the two companies as separate entities for purposes of the tortious interference." (*Id.* at 5.) However, Judge Bernthal held that McLeodUSA would be required to "pierce the corporate veil" if it wished to show that MUSATS should not be treated as an interfering third-party to the business expectancy between McLeodUSA and Cass. (*Id.* at 4.) As McLeodUSA did not contend that the corporate veil of MUSATS should be pierced, Judge Bernthal denied the motion. (*Id.*)

**Argument**
**The Court Should Set Aside the April 14 R&R**

McLeodUSA respectfully submits that the April 14 R&R should be set aside for three reasons:

*First*, neither the April 14 R&R nor Cass have identified any Illinois case supporting Cass' theory that a corporate subsidiary may somehow be held to have coerced or

4

induced its own parent corporation to act contrary to the parent's business relations. That claim is illogical on its face—a parent necessarily exercises control over its subsidiary, not vice versa. In the absence of any supporting legal authority, Cass should not be permitted to go forward on its fundamentally illogical claim.

*Second*, the facts pleaded by Cass confirm that MUSATS cannot be treated as an interfering third-party in this action. As Cass itself pleads, the partnership agreements at the center of Cass' complaint forbade McLeodUSA from offering competing cellular services on its own or *through its corporate affiliates*. The parties themselves thus explicitly declined to treat corporate subsidiaries as strangers, but rather expressly covered the conduct of subsidiaries in the partnership agreements. Cass' theory in Count III is thus directly contrary to the agreements underlying all of Cass' claims. Moreover, Cass' Count III is internally inconsistent because it necessarily depends upon the parties' agreement to treat McLeodUSA and its subsidiaries together while at the same time contending that MUSATS should be treated as an independent interferer. Cass cannot have it both ways within the same count.

*Third*, McLeodUSA respectfully submits that the "piercing the corporate veil" analysis set out in the April 14 R&R does not apply in this context. Multiple cases recognize that, even leaving the corporate veil intact, corporate parents and subsidiaries share common interests and are thus appropriately treated as acting together rather than as third parties. The April 14 R&R does not address this authority.

For each reason, Cass' Count III fails to state a claim upon which relief may be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**I.    Cass has Cited No Authority Directly Supporting its Count III.**

To plead tortious interference with a business expectation, a plaintiff must show: (1) a reasonable expectation of a valid business relationship; (2) defendant's knowledge of the plaintiff's expectancy; (3) defendant's purposeful interference to defeat the expectancy; and (4) damages resulting from the interference. *Eisenback v. Esformes*, 221 Ill. App. 3d 440, 444, 582 N.E. 2d 196, 199 (1991). Additionally, it is well-settled that the tort only applies to alleged interference with an expectation or relationship between the plaintiff and a third party—as a matter of law, a defendant cannot interfere with itself. *DuPage Aviation Corp. v. DuPage Airport Auth.*, 229 Ill. App. 3d 793, 802-3, 594 N.E.2d 1334, 1340 (1992); *Bass*, 328 Ill. App. 3d at 503, 765 N.E.2d at 1089; *Parkway Bank & Trust Co. v. City of Darien*, 43 Ill. App. 3d 400, 403, 357 N.E.2d 211, 214-15 (1976). Under those principles, Magistrate Bernthal correctly dismissed Cass' initial Count III because Cass had pleaded that McLeodUSA had interfered with Cass' relationship with McLeodUSA itself. (Docket No. 20 at 6-7.)

Cass' new Count III attempts to side-step those rules by substituting MUSATS for McLeodUSA as the defendant, implausibly arguing that MUSATS interfered with its own corporate parent's relationship with Cass. (Am. Compl. ¶¶ 40-61.) But neither Cass nor the April 14 R&R have cited *any* Illinois case upholding the notion that a subsidiary may tortiously induce or coerce its own corporate parent to act in derogation of a plaintiff's business expectation. The primary case relied upon in the R&R, *MASA Inc. v. ICG Keeprite*, No. 88 C 2133, 1989 WL 75196 (N.D. Ill. 1989),[1] has no application to that strange theory. That case dealt with the relationship between two corporations (Heil and ICG) that shared a common investor (Inter-City). *Id.* at *2. The court rejected the argument that Heil and Inter-City should

---

[1] It appears that the April 14 R&R mistakenly cites another opinion in the same case, published at 1990 WL 165306 (N.D. Ill. Oct. 24, 1990), rather than the opinion cited above.

be treated as the "same economic unit" for purposes of a tortious interference claim. *Id.* That result was unsurprising: Heil and Inter-City did not share a parent-subsidiary relationship, but merely shared a single investor, Inter-City, which itself only held interests in the companies "indirectly." *Id.* Thus, nothing in the relationship between Heil and ICG—merely sharing an indirect investor—suggested that it would be implausible that one could coerce or induce the other into breaching business relationships.

Similarly, Cass cited several cases before Magistrate Bernthal suggesting that, absent a privilege, a *parent* corporation may be held liable for interfering with its *subsidiary's* business relations—the exact converse of Cass' theory here. *E.g.*, *Valores Corp. v. McLane Co.*, 945 S.W.2d 106, 168 (Tex. Ct. App. 1997). But again, this is unsurprising: parent corporations obviously exercise control over their subsidiaries such that a parent could conceivably coerce or induce a subsidiary to breach.

None of those cases supports Cass' novel theory here. Nothing in Cass' amended complaint suggests how MUSATS could coerce or induce its own parent McLeodUSA to terminate its business relationship with Cass or the partnerships. Since a parent corporation by definition exercises ownership and control over its subsidiary, the subsidiary is in no position to coerce or lure its own parent. Neither Cass nor the April 14 R&R identify any Illinois authority to the contrary. In the absence of any directly supporting authority, Cass should not be permitted to proceed on its novel claim.

## II.     Cass' Count III is Contrary to the MCA Partnership Agreement.

Even if extreme circumstances might be imagined in which a subsidiary could theoretically induce or coerce its own parent into breaching a business relationship, there are no facts pleaded in Cass' complaint to support that theory here. Quite the opposite, the partnership

7

agreements—the documents at the center of each one of Cass' counts—confirm that Cass' Count III has no legal basis.

The crux of Cass' complaint, including Count III, is the non-competition obligation set out in the MCA and SMSA Partnership agreements. In the MCA non-competition provision, the parties agreed that:

> [N]either the Managing Partner [McLeodUSA] *nor any Affiliates thereof* shall be permitted, directly or indirectly, to provide Cellular Service . . . in competition with the Partnership.

(Am. Compl. ¶ 13; Am. Compl. Ex. A § 7.7, emphasis added.) Similarly, in the SMSA Partnership agreement, the partners agreed that:

> No Partner *or Affiliate of a Partner* shall provide Cellular Service independently of the Partnership within any [territory] subject to this Agreement. If any Partner or *Affiliate of a Partner* wishes to provide Cellular Service independently of the Partnership within any such [territory], such Partner shall withdraw from the Partnership.

(Am. Compl. Ex. B § 6.12, emphasis added.) Cass pleads that MUSATS is an "affiliate" of McLeodUSA. (Am. Compl. ¶ 15.) Thus, from the outset of the partnerships, the parties agreed that McLeodUSA and its affiliate MUSATS would be treated *together* for purposes of the non-competition obligations. For that reason alone, Cass' Count III should be dismissed—the parties long ago agreed that corporate affiliates would be treated as governed by the agreements, not as third-party strangers.[2]

Indeed, even as Cass attempts to turn that agreed treatment on its head, Cass' Count III *still* depends on the very same non-competition obligations that treat McLeodUSA and MUSATS together. The theory of Count III is that McLeodUSA was supposedly compelled to

---

[2] For the same reason, Cass' reliance on foreign jurisdiction cases to support its subsidiary-interfering-with-parent theory is also misplaced. The case Cass cited before Judge Bernthal, *Peacock v. General Motors Acceptance Corp.*, 432 So. 2d 142 (Fla. App. Ct. 1983) did not involve a contract that expressly treated the corporate parent and subsidiary together with respect to the allegedly interfering conduct.

withdraw from the partnerships because the competing service provided by MUSATS breached the "affiliate" provisions of the non-competition obligations. (Am. Compl. ¶ 58.) In other words, the only way Cass claims that MUSATS supposedly coerced McLeodUSA to exit the partnerships was by violating a contractual provision in which the parties themselves agreed to treat McLeodUSA and MUSATS together.

Count III is thus internally inconsistent, and must be dismissed. *See, e.g.*, *CEO Marketing Promotions Co. v. Heartland Promotions, Inc.*, 739 F. Supp. 1150, 1152-53 (N.D. Ill. 1990) (count containing "internal inconsistency" is "subject to dismissal"); *see also Credit Gen. Ins. Co. v. Midwest Indemnity Corp.*, 916 F. Supp. 766, 772 (N.D. Ill. 1996) (same). Either the parties agreed to treat McLeodUSA and its affiliates together in the partnership agreements (a necessary element of Cass' theory of how MUSATS supposedly interfered with McLeodUSA), *or* MUSATS should be treated as a stranger to the partnership relationships (a necessary element of showing third-party interference). Both cannot be true in the same Count III. As Judge Bernthal acknowledged, it would be unfair to permit Cass to selectively treat MUSATS as a stranger for some purposes and together with McLeodUSA for other purposes. (April 14 R&R at 5.) Count III attempts this selective treatment within the same legal theory—not in the alternative—and should be dismissed.

### III. Piercing the Corporate Veil is Inapt.

Finally, McLeodUSA respectfully submits that the "piercing the corporate veil" analysis employed in the April 14 R&R is inapt. As a matter of law, it is not necessary to pierce the corporate veil in order to demonstrate that a corporation and its subsidiary should not be treated as third-parties. The sole unpublished case relied on in the April 14 R&R to hold otherwise—*MASA v. ICG Keeprite—* is unpersuasive.

It is well-settled in a variety of contexts that subsidiaries are not appropriately treated as third parties to their parents because:

> A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one. . . . They share a common purpose whether or not the parent keeps a tight rein over the subsidiary; the parent may assert full control at any moment if the subsidiary fails to act in the parent's best interests.

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771-2 (1984). Thus, in holding that a subsidiary should not be treated as a third party to its parent corporation for purposes of an anti-trust claim in *Copperweld*, the Supreme Court expressly recognized that a parent and subsidiary are legally distinct (*i.e.*, the veil was not pierced), but nevertheless held that treating them as strangers would "look[] to form of an enterprise's structure and ignores the reality." *Id.* at 772. That logic has been applied to a variety of contexts. *E.g.*, *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 934 (7th Cir. 2003) (parent and subsidiary not third-parties for purpose of RICO); *Nissan Motor Acceptance Corp. v. Schaumburg Nissan, Inc.*, No. 93-C2701, 1993 U.S. Dist. Lexis 12774, at *27 (N.D. Ill. Sept. 15, 1993) (same for Automobile Dealer's Day in Court Act claims); *cf. Alderson v. Southern Co.*, 747 N.E.2d 926, (Ill. App. Ct. 2001) (["p]arents of wholly-owned subsidiaries *necessarily* control, direct, and supervise subsidiaries to some extent").

As in those cases, McLeodUSA and MUSATS, as parent and subsidiary, shared a "unity of interest" under the partnership agreements. The parties themselves recognized as much in addressing both McLeodUSA and its affiliates together for purposes of the non-competition obligations. (*See* Am. Compl. Ex. A § 7.7.) But neither the April 14 R&R nor the *MASA* case cited therein address the above cases or the general principle that the extreme remedy of piercing the corporate veil is not always necessary to show that a parent corporation and its subsidiary

should be treated together. Especially in the context of the partnership agreements in this case—which indisputably treated McLeodUSA and MUSATS as joint actors for purposes of the non-competition obligation—the April 14 R&R's reliance on "piercing the corporate veil" is mistaken.

In response, Cass is likely to argue that some courts have declined to apply the principles of *Copperweld* in specific cases. But Cass has so far identified no such authority involving, as here, a tortious interference claim related to a contract that expressly covered the conduct of *both* the parent and the subsidiary. That peculiar and undisputed factual scenario distinguishes Cass' Count III and cries out for the common sense finding that MUSATS should not be treated as a stranger to McLeodUSA in this case.

## Conclusion

For the reasons stated above, the Court should set aside the April 14 R&R and dismiss Cass' Count III.

>Respectfully submitted,
>
>McLeodUSA Holdings, Inc. and
>McLeodUSA Telecommunications Services, Inc.
>
>By:   s/ Edward F. Malone
>      One of Its Attorneys
>
>Edward F. Malone
>Daniel J. Weiss
>Andrew W. Vail
>Attorneys for McLeodUSA Holdings, Inc. and
>McLeodUSA Telecommunications Services, Inc.
>Jenner & Block LLP
>One IBM Plaza
>Chicago, Illinois 60611
>(312) 222-9350
>(312) 527-0484 (fax)
>emalone@jenner.com
>dweiss@jenner.com
>avail@jenner.com

April 28, 2005

**CERTIFICATE OF SERVICE**

I, Edward F. Malone, an attorney, caused the foregoing **McLEODUSA's OBJECTION TO APRIL 14, 2005 REPORT AND RECOMMENDATION REGARDING COUNT III and MEMORANDUM IN SUPPORT**, to be filed electronically this 28th day of April, 2005, with the U.S. District Court for the Central District of Illinois Urbana/Danville Division, and a copy of same sent by first-class mail to counsel below.

Keith E. Emmons
Meyer Capel
306 West Church Street
P.O. Box 6750
Champaign, IL  61826-6750

By:   s/ Edward F. Malone